## RIVERA et al. v. LAWTON.

Circuit Court of Appeals, First Circuit. November 12, 1929.

No. 2366.

Henri Brown, of San Juan, Porto Rico, for appellant.

Frederick T. Paine, of New York City (F. Soto Gras, of San Juan, Porto Rico, on the brief), for appellee.

William Cattron Rigby, of Washington, D. C. (James R. Beverley, Atty. Gen., and Edward A. Kreger, Judge Advocate Gen., of Washington, D. C., of counsel), in behalf of the People of Porto Rico, as amicus curiæ in opposition to the motion to reverse and remand.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge. This is an appeal from the Supreme Court of Porto Rico.

In July, 1922, Rafael Carrion laid out lands owned by him in a residential section of San Juan into twelve lots, six on each side of a street, naming the whole parcel Carrion's Court. He began the sale of these lots according to this plan of improvement, putting into each deed the restriction that "the purchasers, their heirs and successors agree and bind themselves to construct a single house and other restrictions which shall hereafter appear." This recorded plan created equitable easements, enforceable by each of the subsequent owners of these lands. See Glines v. Matta, 19 Porto Rico 388, in which the Supreme Court held that the doctrine set forth in section 1342 of Pomeroy's Equity Jurisprudence was applicable under the Porto Rican Code. Cf. Tobey v. Moore, 130 Mass. 448; Atty. General v. Algonquin Club, 153 Mass. 447, 27 N. E. 2, 11 L. R. A. 500.

In February, 1922, Carrion sold to the plaintiff Lawton lot No. 3 on Carrion's Court, and Lawton erected thereon a substantial house.

In January, 1922, Carrion had sold to one Joy lot No. 4, and in December, Joy sold a part of lot No. 4 to Dr. Arturo L. Carrion, a brother of Rafael; and in April, Joy sold to Rodriguez the rest of lot No. 4. Dr. Carrion acquired from lots 5 and 6 other narrow strips, so that (in short) the plan was to make the three lots, 4, 5, and 6 into four lots and build thereon contrary to the restriction. Rodriguez began the construction of a second house on lot No. 4, next to the plaintiff Lawton's property; Lawton brought in the District Court of San Juan a suit in equity; and, on full trial, obtained an injunction ordering Rodriguez to remove the part of the house already constructed and thereafter to refrain from building, contrary to the restriction. On appeal to the Supreme Court this decree was affirmed, on May 21, 1926.

Meantime, Carrion, the author of this plan of improvement, bought from Rodriguez the lot on which Rodriguez had begun a house, Carrion having full knowledge of the injunction and its affirmance by the Supreme Court; and later undertook to finish the house begun by Rodriguez. Thereupon, Lawton cited him into the District Court to show cause why he should not be punished for contempt, and a peremptory mandatory injunction issued against him ordering him to comply with the restriction. Carrion appeared and filed a long answer, and was also heard at length in evidence.

The District Court held, on rather narrow and technical grounds, that the original injunction was not binding on Carrion. On appeal to the Supreme Court, this judgment was reversed, in an able opinion by Chief Justice Del Toro, holding that Carrion was successor in interest to Rodriguez, had full knowledge of all the facts, was bound by the decree against Rodriguez, having acquired title after the judgment against Rodriguez of which he had notice, and was in contempt of court. Compare In re Lennon, 166 U. S. 548, 17 S. Ct. 658, 41 L. Ed. 1110; Union Tool Co. v. Wilson, 259 U. S. 107, 113, 42 S. Ct. 427, 66 L. Ed. 848; G. & C. Merriam Co. v. Saalfield (C. C. A.) 190 F. 927. In a supplementary opinion, the Supreme Court limited its judgment to ordering a peremptory injunction against Carrion, commanding him to destroy the building on this land within 90 days, and remitting the case to the District Court to deal with the contempt proceedings. From this judgment Carrion appealed to this court.

In addition to fourteen assignments of error, the appellant has filed a motion to reverse and remand, supported by an affidavit by Carrion to the effect that the proceedings both in the District Court and in the Supreme Court were void, because both those courts were held in the Santo Domingo Barracks, which was owned by and in which the United States had complete sovereignty and had assigned to the immediate control of the War Department of the United States. On this question a motion of the people of Porto Rico to appear as amici curiæ and be heard by counsel was granted. Shortly stated, this proposition, if sustained, would probably invalidate all the proceedings, both of the two District Courts of San Juan and the Supreme Court of the Island, during the entire 30 years of the American occupation. The contention is without foundation; it may be briefly disposed of. The authority of Congress over Porto Rico is plenary. Under article 4, sec. 3, clause 2 (Const.), Congress has full power "to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." It might even provide that all judicial proceedings should be held in the United States instead of on the Island.

It clearly appears from the history, elaborately set forth in the brief filed by learned counsel for the people of Porto Rico, that from the beginning of our occupation Congress has, at least by necessary implication, approved of the use of the Santo Domingo Barracks by the Porto Rican courts. The contention that for 30 years all the proceedings of the Supreme Court and the two Dis-

trict Courts of San Juan are void seems to us too far-fetched and revolutionary to be dignified by prolonged discussion.

█ We find nothing in the assignments of error calling for discussion. The situation is plain and simple. Whether the original injunction, in definite terms, did or did not bind Carrion, he had due process of law; for he was cited in and given as full a hearing as though he had been the original defendant. Moreover, the proceedings for contempt (which are not really before us) are plainly only for civil contempt, to compel obedience to the injunction now outstanding and valid against Carrion. This injunction must be enforced. See Gompers v. Bucks Stove Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; Mitchell v. Dexter (C. C. A.) 244 F. 926; Marcus v. Penn. Tr. Co. (C. C. A.) 23 F.(2d) 303, 304.

The judgment of the Supreme Court of Porto Rico is affirmed with costs to the appellee.