**Susan Opava STITZER, Plaintiff,**

v.

**UNIVERSITY OF PUERTO RICO, Norman Maldonado, individually and as Chancellor of the Medical Sciences Campus of the University of Puerto Rico; Pedro Juan Santiago Borrero, individually and in his capacity as Dean of the School of Medicine of the University of Puerto Rico, Defendants.**

**Civ. No. 83–1236CC.**

United States District Court,
D. Puerto Rico.

Aug. 22, 1985.

As Modified Sept. 9, 1985.

Jorge M. Suro and Carlos V. García-Gutiérrez, Santurce, Puerto Rico, for plaintiff.

James D. Noel, III, Hato Rey, Puerto Rico, for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

Dr. Susan Opava Stitzer, a professor at the University of Puerto Rico's School of Medicine, filed this complaint against the University of Puerto Rico (UPR), the Chancellor of its Medical Sciences Campus, Dr. Norman Maldonado, and the Dean of its School of Medicine, Pedro Juan Santiago Borrero, alleging that she was transferred from the Physiology Department of the School of Medicine to its Pharmacology Department in violation of her constitutional and statutory rights to express herself and be free from discrimination because of sex. Specifically, she claims that her First Amendment rights to free speech were violated because the departmental transfer resulting in her exclusion from the faculty meetings of the Physiology Department was a punitive measure taken in retaliation to views which she voiced at these meetings and that defendants discriminated against her in violation of the Civil Rights Acts of 1871 and 1964, 42 U.S.C. Section 1983 and Section 2000(e),[1] because instead of transferring her male counterpart in the Physiology Department they transferred her, the only woman with her rank in that department. Plaintiff's central claim of adversity resulting from the transfer is that she will not be able to attend the faculty meetings of the Physiology Department. Presently before us is defendants' motion and plaintiff's cross-motion for summary judgment on the issue of whether an administrative proceeding against the Chancellor initiated as a result of the transfer and which ended in a decision adverse to plaintiff bars the present action on grounds of res judicata or collateral estoppel.

The record reveals that there were internal conflicts between plaintiff and some faculty members of the Physiology Department. There is correspondence referring to a situation of personal conflicts which had the Physiology Department paralyzed. The former department director rejected in a letter the recommendation made by departmental colleagues against her promotion, saying that it was the result of their personal conflicts with her. The Dean of the School of Medicine transferred plaintiff to the School's Pharmacology Department which needed a professor in the area of physiology expertise, renal func-

---

1. Plaintiff also alleges violations to her Fifth, Ninth and Fourteenth Amendment rights but has not detailed specifically which. She also included an action under Puerto Rico's tort law in her pretrial which was not asserted in the complaint.

tions. The Pharmacology Department is located in the same building as the Physiology Department but on a different floor. Plaintiff was assigned classes in her particular field of research expertise and was permitted to continue research in laboratory facilities provided by the department.

Plaintiff was dissatisfied with this decision, apparently feeling that she had been singled out and penalized because of the other faculty members's differences with her.[2] She considers that the transfer may affect her future research opportunities in physiology because the graduate students to whom she will now be exposed are inclined toward pharmacology rather than physiology and, since her doctorate, training and research are in the field of physiology, she understands she will encounter difficulty teaching this subject matter.[3] Even though research in renal physiology involves the effect of drugs on living organisms and plaintiff will be assigned to this area of pharmacology in her teaching assignments, she considers that the pharmacology department's alleged need for a professor with a background in renal physiology was just a pretext to justify discriminating against her.

These concerns were expressed in several letters to the Dean after he informed her of the possibility of a transfer and asked for her comments. She also voiced her concern to the Chancellor who, after receiving her views, informed her on January 1981 that it was in the best interests of the School of Medicine to transfer her to the Pharmacology Department. She then filed an administrative appeal through counsel, the same as in this case, to the Office of the President of the University of Puerto Rico, as provided by *P.R.Laws Ann.*, Title 18 Section 604(c)(9), alleging that the transfer violated her rights under the Puerto Rico and United States Constitutions to equal protection of the law, due process, to be free from sex discrimination and to be free to express her views. She argued that the transfer violated her rights under the University of Puerto Rico Law and Regulations. She also filed a motion to stay the transfer pending resolution of her appeal before the Office of the President, again arguing the possible violations to her constitutional rights that the transfer entailed. The Chancellor replied that the University of Puerto Rico's Regulations were complied with, that for transfers that do not involve a change of residence these only require prior consultation with the affected teacher and departments and that the decision was neither arbitrary nor unconstitutional since he exercised his discretion after considering the best interests of the School of Medicine since the position that plaintiff would be assigned to in the pharmacology faculty filled a need in that department, required someone with training in physiology, would not affect her research, she would be assigned classes in her field, would remain in the same building and would give lectures to her same students. The Chancellor mentioned that another factor taken into account in the decision to transfer was the interpersonal conflicts between plaintiff and other physiology faculty members to the point that she had been given a negative evaluation by them which had to be re-examined and corrected by higher offi-

---

**2.** She claims that a male faculty member who had training in pharmacology should have been transferred instead of her. It appears that this faculty member, although not transferred, was reassigned to other tasks within the department.

**3.** Plaintiff has proposed the testimony of a former director of the Physiology Department, Dr. Manuel Martínez-Maldonado, as an expert to establish the difference between the two fields and why her transfer, in view of this difference, would be so unreasonable as to evince a prima facie case of sexual discrimination. Defendants have opposed the use of Dr. Martínez-Maldona-

do's testimony as an expert for these purposes. For purposes of this analysis, however, we merely refer to Webster's definition of the two fields: physiology: "a branch of biology dealing with the processes, activities and phenomena incidental to and characteristic of life or of living organisms; the study of the function and activities of living matters ... and of the physical and chemical phenomena involved;" pharmacology: "the science of drugs ... the properties and reactions of drugs esp. with relation to their therapeutic value." *Webster's 3rd New Int. Dictionary,* (G. & C. Merriam Co. 1976).

cials. In view of this problem which affected not only the functioning of the physiology department but plaintiff's employment itself since department colleagues perform the initial evaluation and recommendations, and considering her professional training, the Chancellor considered that the solution to the problem in terms of what would be in the best interests of the University was to reassign plaintiff to another department where her skills were needed. After examining these arguments, the Office of the President considered that an administrative hearing should be held. Several days of hearings were held and plaintiff, represented by counsel, presented witnesses and documentary evidence and later submitted additional documentary evidence to show the difference between pharmacology and physiology. Most, if not all, of the documentary evidence submitted at the administrative hearing and many of the witnesses are the same as those listed in the pretrial order in this case.

The examining officer issued a Report and Recommendation on February 5, 1982 [4] recommending that plaintiff's appeal be dismissed. The examiner indicated that "/ w /ith the intention of receiving the most information possible, the parties were not limited in regard to time for the presentation of their evidence, reason why the hearings were extended for three days." The following are important findings of fact made by the examiner: "/ s /ince the middle of 1979 there has existed an internal problem of interpersonal relationship in the Physiology Department where in one way or another practically all of the Department's professors have been involved, with the productivity of the same having been affected" and that

/ t /he Pharmacology Department offers courses related to Physiology, having been in charge of (sic) Dr. Jesús Santos Martínez, who retired ... in the middle of 1979 ... [t]his situation, together with the new academic approaches in the Renal Pharmacology field, have created the need for covering the Physiology area in the Pharmacology Department, specially in the renal aspects. Dr. Santos-Martínez belonged to the Physiology Department and later transferred to the Pharmacology one ... Physiology has many areas in common with Pharmacology. Pharmacology is complemented by Physiology in the same manner as it does with Biophysics, Biochemistry and Pathology. The pharmacology student must have knowledge of Physiology because the latter is the basis of all the basic sciences, in other words, it is the basis of medicine.

The officer also concluded that Dr. Opava did not need any special training to teach the new courses related to physiology that she would be assigned in the Pharmacology Department. The officer concluded that the Chancellor acted according to the University of Puerto Rico's laws and regulations, that plaintiff "was not able to establish that the transfer decision constituted a punishment, responded to reprisals or was violating her constitutional rights ... /or/ that the transfer was effected as a sanction because she was considered responsible for the interpersonal relationship problems taking place in the Physiology Department." The examining officer pointed out that the Chancellor, at the same time that he was considering the transfer request from the Dean, recommended plaintiff favorably for permanence and promotion and that her seniority rights, ranking, salary, laboratories and research work, office facilities, endeavors to obtain scholarships and financial aid and her teaching area in the physiology field were respected in the transfer. The officer considered that the Chancellor's decision, given his responsibilities, "should not be revoked in the absence of a clear and unequivocal demonstration that the same was carried out in a discriminatory, arbitrary, capricious, hasty manner or contrary to the Law or Regulation." Plaintiff requested a transcript of the proceedings and an extension of time to submit her objections to the Report and Recommenda-

---

**4.** The instant case was filed on May 23, 1983.

tion. On April 15, 1982 she was given eight recorded cassette tapes and fifteen additional days to present her objections but did not submit any. On May 17, 1982 the President of the University of Puerto Rico adopted the examining officer's recommendations. Plaintiff appealed the President's decision to the Higher Education Council pursuant to *P.R.Laws Ann.*, Title 18 Section 602(e)(6), but the Council on June 29, 1982 dismissed her appeal and affirmed the Chancellor's decision.

On August 2, 1982 plaintiff filed a Petition for Review [5] before the Superior Court of Puerto Rico against Dr. Norman Maldonado to review the Council's decision. In this petition plaintiff alleged that her transfer was discriminatory because of her sex and retaliatory because of her criticism to the department. She argued that the transfer violated her rights under the Puerto Rican Constitution to due process of law, freedom from sexual discrimination and freedom of speech. Citing Puerto Rico as well as federal cases, she contended that the transfer established a prima facie case of sex discrimination and a violation of her freedom of expression as a teacher. The Superior Court on August 19, 1982 issued an order to show cause why a writ should not be issued to reverse the administrative decision. Defendant responded seeking dismissal of the petition because plaintiff had failed to oppose the Examining Officer's Report and Recommendation. On May 9, 1983 the Superior Court considered defendant's motion as one to dismiss "without addressing the merits" of the petition and denied it. The Court said:

the fact that the petitioner did not object to the examining officer's report before the President of the University issued his decision in this case is not adequate

grounds to dismiss the petition for review. It should be noted that the University did not object to the petitioner's appeal in this case before the Council on Higher Education on the grounds that she (sic) is now alleging and therefore said grounds should be understood to have been waived. Besides that, the fact that she did not object to the report before the president reached a decision cannot have the effect of confirming the president's decision in the event that the same would be contrary to the record.

The court gave defendant fifteen days to "reply on the merits" to the order to show cause. After an extension of time the defendant replied [6] and the court issued the following resolution on April 5, 1984: "Judgment: Having considered the appeal for review filed August 2, 1982, its annexations and the opposition filed August 12, 1983, the court after analyzing and considering each and everyone of the arguments propounded by the parties, denies the appeal for review." [7] Plaintiff did not request reconsideration from the Superior Court or review by certiorari from the Supreme Court of Puerto Rico. There is no question as to the finality of this Judgment.

Based on these proceedings and pursuant to the holding of *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) and *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), defendants contend that litigation of the present action is precluded by the administrative proceedings and the Superior Court decision. Defendants argue that *Kremer* held that 28 U.S.C. § 1738 requires that we afford the

5. The translation of "Petición de Revisión" in the record, as made by the court translator, is Appeal for Review.

6. We do not have in the record before us the defendant's reply on the merits in the Superior Court proceeding.

7. This order has not been officially translated, the Spanish version reads:

"SENTENCIA
Atendido el recurso de revisión radicado el día 2 de agosto de 1982, sus anejos y la oposición al mismo radicado el día 12 de agosto de 1983, el tribunal previo análisis y consideración de todos y cada uno de los argumentos vertidos por las partes declara NO HA LUGAR el recurso de revisión instado."

Superior Court's judgment the same preclusive effect that it would be given in Puerto Rican courts even on the Title VII sex discrimination in federal employment claims and that *Allen* and *Migra* require the same preclusiveness as to the civil rights claims. They allege that the requirements for the application of res judicata and collateral estoppel by Puerto Rico courts are all met: a final decision and that "there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." *See: P.R.Laws Ann.*, Title 31 Section 3343. Plaintiff counters that neither res judicata nor collateral estoppel may be applied to preclude any of the claims or issues before us because the Superior Court decision was not on the merits. She points to Rule 16 of the Rules for the Review of Administrative Decisions by the Superior Court, *P.R.Laws Ann.*, Title 4 Ap. VIII–A, and to the fact that the Superior Court did not issue the writ to review in support of her position that the court's decision was merely an unexplained declination to exercise its purely discretionary power to review, without considering the merits of her case. She also argues that the Superior Court's decision does not bar this litigation because there is no identity of parties and that application of claim or issue preclusion to the case would be unjust since the administrative decision was made by the officers and entity she is now suing.

In *Kremer v. Chemical Const. Corp.*, the Supreme Court did hold that Title VII of the Civil Rights Act of 1964 was not an exception to the full faith and credit provision of 28 U.S.C. § 1738 and in *Allen* and *Migra* similar rulings were made as to constitutional claims. The *Kremer* decision is particularily interesting to this case in view of plaintiff's position that the Superior Court's judgment was not on the merits. The Court in *Kremer* considered that a New York Supreme Court Appellate Division's affirmance of a New York agency's rejection of an employment discrimination claim as meritless had preclusive effect and barred an action in federal court under Title VII for national origin and religious discrimination in employment. Despite the fact that in *Kremer* the administrative agency involved, the New York State Division of Human Rights (NYHRD), summarily dismissed Kremer's complaint for lack of merit without holding a hearing and the New York court affirmed the dismissal merely on the limited grounds that the agency's decision was not arbitrary, capricious or an abuse of discretion, the Court found that the full faith and credit clause required that it give the New York court's decision the same preclusive effect it would receive in New York. In response to the dissenting opinion's argument that the New York court's affirmance could not be considered a decision on the merits, the Court made reference to the state criteria of review of a decision dismissing summarily a complaint before the NYHRD whereby the reviewing court must find that the complaint lacked merit as a matter of law. The Court stated:

> Justice Blackmun and Justice Stevens wrongly assert that the New York court's holding does not constitute a finding 'one way or the other' on the merits of petitioner's claim ... when the NYHRD summarily dismisses a complaint the appellate division must find that the petitioner's 'complaint lacks merit as a matter of law'.... It is well established that judicial affirmance of an administrative determination is entitled to preclusive effect. There is no requirement that judicial review must proceed *de novo* if it is to be preclusive. Furthermore, as we have explained, Congress did not draft the *de novo* requirement in order to deny preclusive effect to state decisions.

(Citations omitted.) *Kremer*, 102 S.Ct. at 1896, n. 21. The Court's only caveat to the application of the preclusive effect of the full faith and credit provisions to this situation was that the state court's judgment must "satisfy the applicable requirements of the Due Process Clause" *id.* at 1898. The Court found that New York's administrative procedure gave Kremer the opportunity to present evidence even at the ini-

tial pre-hearing stage and satisfied minimum due process requirements. The Court held that the administrative nature of the fact finding process was not dispositive of the applicability of res judicata as long as opposing parties had an adequate opportunity to litigate disputed issues of fact before an administrative agency acting in a judicial capacity. *Id.* at 1899 n. 26. The Court, however, rejected applying full faith and credit preclusive effect to administrative decisions that were not reviewed judicially even if "such a decision were to be afforded preclusive effect in a state's own courts," but acknowledged that the reviewing court did not have to hold a *de novo* hearing and could base its decision on the fact finding process at the administrative level. *Id.* at 1891 n. 7 and 1896–99. In *Unger v. Consolidated Food Corp.*, 693 F.2d 703 (7th Cir.1982) *cert. denied,* —— U.S. ——, 104 S.Ct. 549, 78 L.Ed.2d 723, the appellate court, on remand from the Supreme Court to consider the case in light of *Kremer,* approached an argument similar to plaintiff's position which also rested on *Kremer's* vigorous dissent. Trudy Unger argued that the state court which ruled against her applied a less stringent standard of review than the New York court in *Kremer* and thus could not be considered as a decision on the merits on the issue of sex discrimination. The appellate court rejected her argument finding that the judicial review standards for both courts were similar: a deferential standard of administrative review whereby the agency's decision would be upheld if based on the record or not arbitrary capricious or an abuse of discretion. *Unger* at 706–07. The Court said:

> There are at least two reasons for rejecting any argument directed to the absence of a state court *de novo* trial or some 'decision on the merits' equivalent. First, the Supreme Court has already done so; the *Kremer* Court was fully aware that the New York state courts were conducting an administrative review of a state agency preoceeding. Second, Unger's argument proves too much: by her logic, no state court administrative review decision would have to be accorded preclusive effect by the federal courts regardless of whether that state's courts would do so. That, however, would be clearly inconsistent with Section 1738 which is the statutory version of the full faith and credit clause.

*Id.* The *Unger* court poignantly pointed out that it was unclear why the *Kremer* majority took up the dissenter's view that the judicial review of the agency's decision was not on the merits since the majority had found that there was no support for a partial repeal of the full faith and credit provision by Title VII. The *Unger* appellate court considered that given this finding, "a federal court should be foreclosed from inquiring into the nature of the state court decision if the state would grant it preclusive effect, ... assuming the due process concerns noted above were satisfied." *Unger* at 706, n. 6. In *Burney v. Polk Community College,* 728 F.2d 1374 (11th Cir.1984) the court rejected an attempt to distinguish *Kremer* based on the type of agency which made the initial determinations. Burney, a black guidance counselor in a community college was dismissed after receiving a panoply of administrative procedures within the educational institution which were very similar to the ones received by plaintiff Opava and in which he challenged the institution's decision as racially discriminatory. Burney challenged the applicability of *Kremer* since the agency involved was not one statutorily authorized to enforce the state's anti-discrimination in employment laws. The court rejected this argument indicating that the only articulated criteria announced in *Kremer* regarding administrative proceedings was that they comply with due process standards. It emphasized that the *Kremer* decision viewed the state court *judgment* as being the decision which Section 1738 required giving preclusive effect to in the manner it would be afforded preclusive effect in a state court. *Id.* Following the teaching in *Kremer* with respect to the Title VII claim and that of *Allen* and *Migra* in relation to the other constitutional

**1254**

claims, the initial determination to be made is whether Puerto Rico courts would give preclusive effect to the Superior Court's judgment of April 5, 1984 denying plaintiff's petition to review.

In Puerto Rico, judgments are given preclusive effect if they are final and on the merits. *See: Millan v. Caribe Motors Corp.*, 83 PRR 474 (1961); *Manrique v. Aguayo*, 37 PRR 314, 320 (1927). Judgments dismissing actions for lack of jurisdiction, on grounds of unripeness or voidness have been considered not on the merits and lacking preclusive effect, *see: De Jesús v. Guerra Guerra*, 5, *Official Translations of the Opinions of the Supreme Court of Puerto Rico*, 282, 105 DPR 207 (1976); *Fresh-O-Baking Co. v. Molinos de Puerto Rico*, 3, *Official Translations of the Opinions of the Supreme Court of Puerto Rico*, 708, 103 DPR 509 (1975); *Tartak v. District Court and Cruz Int.*, 74 PRR 805 (1953). On the matter of collateral estoppel, judgments are "final only as to those matters which were actually raised and which were really or necessarily litigated and adjudicated...." *Id.* The Supreme Court of Puerto Rico has said, however, that the complexities of modern proceedings and the increase in litigation have extended res judicata effect even to decisions which do not really examine or adjudicate the merits of a particular action such as a dismissal for lack of prosecution. *Pérez v. Bauzá*, 83 PRR 213, 217–18 (1961) *and cf.: Lausell Marxuach v. Díaz Yañez*, 3 *Official Translations of the Opinions of the Supreme Court of Puerto Rico*, 742, 103 DPR 533 (1975) (judgment by stipulation was afforded res judicata effect). It has also held that agency rulings made in quasi-judicial administrative procedures have preclusive res judicata effect within the same agency, between different agencies and between agencies and courts. *Pagán-Hernández v. University of Puerto Rico*, 7, *Official Translations of the Opinions of the Supreme Court of Puerto Rico*, 795, 107 DPR 720 (1978). In *Infanzón v. Administrator*, 84 PRR 441 (1962) the court affirmed a lower court judgment dismissing an appeal to review

an administrative decision on grounds of res judicata. The lower court considered that a prior court decision denying a petition to review an administrative decision involving the same parties and issues was res judicata on the subsequent petition to review. The Supreme Court of Puerto Rico found that res judicata was properly applied even though it recognized that the first decision by the lower court denying the petition to review the agency was erroneous. *See also: Caguas Bus Line v. Sierra, Commissioner*, 73 PRR 690 (1952) (party who filed unsuccessful petition for review before the supreme court of administrative board's decision could not attack the board's resolution collaterally in another proceeding by raising matters that should have been raised in the petition for review.) It is clear then that in Puerto Rico a denial of a petition to review an administrative decision will be given preclusive effect if it is considered to be one in which the issues and claims were litigated and necessarily adjudicated.

Plaintiff's main contention narrows down to the proposition that the Superior Court's failure to issue the writ of review is a clear indication that it merely exercised its discretion in favor of not reviewing and declined to consider the merits. She analogizes the Superior Court judgment to the common "No ha lugar" denials by the Supreme Court of Puerto Rico to discretionary petitions for certiorari which, according to *In re Rabassa*, 40 PRR 660 (1930), do not constitute a pronouncement on the merits of the action. This is a mistaken analogy. The Superior Court did not issue a mere "No ha lugar." Furthermore, the proceedings for judicial review of administrative decisions are not entirely akin to the discretionary writ of certiorari generally requested to review partial adjudications of procedural issues in an ongoing litigation which has not yet reached final judgment. *See gen.: Kane v. Republic of Cuba*, 90 PRR 419, 429 (1964).

The right to obtain judicial review of agency action is generally found in the enabling statutes of the particular adminis-

trative agency involved. *See e.g.: Hilton Hotels v. Minimum Wage Board,* 74 PRR 628, 634 (1953). In the case of the University of Puerto Rico, the University Act, *P.R.Laws Ann.,* Title 18 Section 601, *et seq.* does not contain a provision for judicial review of actions of its highest internal decision-making body, the Higher Education Council. However, in *Rivera v. Benítez, Chancellor,* 73 PRR 361 (1952) the Court examined this legislation and concluded that since there was no express provision in the law that the Council's final decisions would be final and binding they could be reviewed by the Superior Court. However, it stated that judicial review would not require the holding of a *de novo* trial but would be made by examining the record of the proceedings had before the administrative agency to determine only if the administrative body committed error of law, one of these being whether the record contained substantial evidence to support the administrative body's findings of fact. The 1952 Judiciary Act, *P.R.Laws Ann.,* Title 4 Section 121 states that "/ t /he Superior Court shall have cognizance of the following matters: (a) Civil: (1) of all appeals and review proceedings against decisions, orders and rulings of administrative agencies under the terms and conditions established by law." In contrast to the Judiciary Act's provisions that expressly distinguish between the highest court's mandatory duty to entertain appeals and its discretionary power to issue writs of review and certiorari, *see: P.R.Laws Ann.,* Title 4 Section 37,[8] the Act does not make that distinction with regard to the appellate functions of the Superior Court. In fact, this court's power to review administrative decisions is one of the specific matters which it "shall have cognizance of." The statute does not say that the Superior Court *may* entertain appeals of administrative decisions but rather that it *shall* have cognizance of these cases "under the terms and conditions established by law."[9] The "terms and conditions" pertinent to judicial review of Council decisions are established by the *Benítez* opinion and not by a detailed set of statutory provisions which would enable us to ascertain the degree of discretion afforded the Superior Court in exercising its original jurisdiction to review that agency. The *Benítez* decision does not support plaintiff's contention that the Superior Court is endowed with an undefined measure of discretion and may, for no particular reason, decline to exercise its original jurisdiction, without even examining the merits of a petitioner's allegations. On the contrary, the concern expressed in the *Benítez* opinion over the establishment by judicial interpretation of a right to obtain judicial review of the Council's decisions previous similar cases had obtained access to the courts through the writ of mandamus, *see: Núñez v. Benítez, Chancellor,* 65 PRR 812 (1946), and its emphasis and description of the standard of review to be applied to this newly created "right," suggest that Superior Court reviewing a final Council decision must, at least, determine whether the petition establishes prima facie that the administrative decision was not based on substantial evidence or that an error of law requiring

---

8. Section 37(a) states: "Save as provided in subsections (d) and (e) of this section, final judgments rendered by the Superior Court in civil cases involving or deciding a substantial constitutional question under the Constitution of the United States or of Puerto Rico shall be appealable to the Supreme Court," whereas section 37(b) indicates "any other final judgment of the Superior Court may be reviewed at the request of the aggrieved party by the Supreme Court through a writ of review to be issued at its discretion." Subsection (d) provides for discretionary through certiorari review of final decisions by the Superior Court reviewing an administrative agency's decision.

9. This distinction between purely discretionary administrative appeals to review and those that are not is followed by the Rules for Review of Administrative Decisions. Rule Eight of these rules establishes a different procedure for non-discretionary review and Rule Four mentions "if the issuance of the writ of review were discretionary of the Superior Court, *pursuant to the special laws authorizing the petition." P.R. Laws Ann.,* Title 4, App. VIII–A. (Emphasis supplied.)

modification or reversal was committed. It is also important to recognize the underlying premise of constitutional magnitude that lies behind providing access to the courts, a premise which undoubtedly moved the *Benítez* court to find such access in the "silence" of the University Act. *See: Sacarello v. Retirement Board,* 75 PRR 253, 276–280 (dissenting opinion by J. Belaval and authorities there cited) (1953). Just recently the Supreme Court of Puerto Rico held that, once the law provides the right to judicial review of an administrative agency decision, such right becomes part of the aggrieved person's due process of law. *Hernández-Sánchez v. Puerto Rico Parking System, Inc.,* 084–798, Op. of March 11, 1985, 85 JTS 17 at p. 3880. The court has also said that judicial review of administrative decisions must be especially rigorous to counterbalance the ample discretion afforded administrative agencies. *Chase Manhattan Bank v. Emanuelli-Bauzá,* Vol. 11, *Official Translations of the Opinions of the Supreme Court of Puerto Rico,* 893, 111 DPR 708 (1981). The importance of the Superior Court's original review jurisdiction is best understood when one examines the appellate scheme of the Judiciary Act to review administrative decisions whereby the Supreme Court has complete discretion to decline review of Superior Court rulings on petitions to review administrative decisions, even when there are substantial constitutional issues. See n. 8. If the Superior Court could decline jurisdiction on purely discretionary grounds, as plaintiff suggests, then in cases such as this one, where constitutional issues were raised, the aggrieved party would never have real access to the courts to present those issues. Given the constitutional hues ingrained in this type of judicial intervention, the comparison with the discretionary writs of review and certiorari is inapposite.

Since there is no legal provision that circumscribes the reviewing power of the Superior Court over decisions of the Council to an unspecified discretion, there is no reason to assume that the Superior Court ignored or disregarded these constitutional principles and the standard of review announced in *Benítez* by deciding without even examining the merits of the constitutional violations raised by plaintiff. See: *P.R.Laws Ann.,* Title 32 App IV, R. 16.18.[10]

The record of the proceedings before the Superior Court also defeats plaintiff's theory. The mere fact that the Superior Court did not issue the writ or request that the administrative record be filed does not mean that it did not examine and rule upon the merits of her petition. The very same rule on which plaintiff bases her theory, Rule 16, suggests that the court may deny the petition without requesting that a record be prepared and filed.[11] This initial procedure appears to be merely a screening type of intervention whereby meritless petitions for review will be summarily denied. The merits of an action are not concerned merely with the proven facts of a case but encompass the application of law to the claims, motives, causes and substantial grounds of action as distinguished from matters of practice, procedure, jurisdiction or form. *See: Clegg v. United States,* 112 F.2d 886, 887 (10th Cir.1940). It is well

---

**10.** If plaintiff is claiming that the Superior Court erroneously dismissed her petition based only on the pleadings and without properly examining the administrative record this would not defeat the application of res judicata. Instead, it should have been raised in the administrative proceedings. *See: Bolker v. Superior Court,* 82 PRR 785 (1961) and *Medina v. Chase Manhattan Bank, N.A.,* 737 F.2d 140, 143 (1st Cir.1984).

**11.** Rule 16 states:
Orders to Show Cause
(a) At any time after the filing of a petition for the issuance of a writ of review, the Court may issue an Order for the parties to show cause why the same should not be issued in order to reverse or modify the decision appealed from.
(b) ....
(c) When the Order is answered or the term to answer expires, the Court shall decide what is proper at law: (1) 'dismissing' the petition; (2) issuing the final writ to reverse or modify the decision, order, resolution, or ruling entered; (3) ordering that the ordinary prosecution of the appeal be followed; or (4) rendering any other ruling or order.

established that reviewing courts may dismiss petitions which are meritless. *See: Central Bocachica v. Treasurer*, 53 PRR 826, 831 (1938); *Smallwood Brothers v. Benítez*, 46 PRR 448 (1934). Said dismissals entail a review of the merits, at least as raised in the allegations. *See e.g. Pagán v. Otero*, 69 PRR 470 (1949). In fact, in *Kremer* it was the administrative body that dismissed the administrative claim as meritless and the court considered it sufficient for res judicata purposes. In this case the Superior Court had the opportunity to dismiss the petition summarily without examining the merits upon deciding defendant's motion to dismiss yet it expressly declined to do so and indicated that the exhaustion-type argument would not validate the agency's decision if it were not based on the record. It also ordered defendant to answer the petition and address the merits. Its judgment thereafter specifically stated that after considering the pleadings and documents submitted by the parties and their arguments the petition to review was denied. This denial was an adjudication on the merits of the matters brought before the court's consideration in plaintiff's petition to review. The ruling necessarily implies a finding that none of plaintiff's arguments were sufficient to defeat the agency's decision that the decision and conclusions of fact were supported by substantial evidence and that no error of law was committed. In short, the Superior Court's denial is in effect a ruling that the decision of the Council was valid and should not be disturbed. The fact that there were no express findings of fact or conclusions of law does not deprive the judgment of its intended scope ascertainable through an interpretation of the context in which it was given. *See: People v. Rosas*, 69 PRR 436 (1948). The lack of specific findings is explainable given the preclusive effect afforded to adjudicatory administrative decisions by Puerto Rico courts, see *Pagán Hernández*, 107 DPR at 733–34. It is not surprising then that courts reviewing this type of decision refrain from repeating at length the agency's findings and conclusions if these are found

valid. Finally, if plaintiff's position were followed the end result would be to give res judicata effect to reversals or modifications of Council decisions only since these would be the most frequent situations where the reviewing court would "issue the writ to modify or reverse" and request that the record be prepared and filed. If only successful petitions were given preclusive effect, the detailed administrative hearing and appeals procedures established by University law and regulations and the judicially crafted provision for review of final Council decision would lack meaning.

■ We, therefore, hold that the judgment of April 5, 1984 issued by the Superior Court of Puerto Rico was a decision "on the merits" for res judicata and collateral estoppel purposes.

■ We must now determine whether the additional requirements of Article 1204, "the most perfect identity between the things, causes, and persons of the litigants and their capacity as such," are met. On the identity between parties, the Civil Code provides:

It is understood that there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations among those having a right to demand them, or the obligation to satisfy the same.

*P.R.Laws Ann.*, Title 31 Section 3343. Manresa, commenting of the Spanish Civil Code's equivalent article and on the Supreme Court of Spain's interpretation of this requirement, states that in practice the identity requirement is met if the actions are equal on all other aspects and the claimants base their claims on the same title or endowment as the previous parties. In *Heirs of Zayas-Berrios v. Berrios*, 90 PRR 537 (1964) the Supreme Court went beyond the pleadings of a previous proceeding to find that the defendant in that proceeding was a nominal party and that the action was really being defended on ac-

count or on behalf of another unnamed defendant which it found was the one now before the court, thus barring relitigation of the claims against him. *See also: Lugo v. Bartolomei*, 46 PRR 647 (1934) (court found party had appeared in representative capacity as heir rather than in his own right in previous proceeding). The "privity" or judicial nexus required by Section 3343 for res judicata purposes is one which would make the previous decision binding on the other party. *See: Lawton v. Rodríguez*, 38 PRR 34 (1928) *aff'd.* 35 F.2d 823 (1st Cir.). In the case before us the complaint alleges that defendant Chancellor and defendant Dean are sued in their official capacity only and for their joint responsibility as officials of the University. They are not being sued in their personal capacity or for acts done beyond the scope of their duties as officers of the university and legal representatives of that institution. *See: P.R.Laws Ann.*, Title 18 Sections 606(b), 608. The previous proceedings, although nominally brought against the Chancellor, were really directed against the institution and against the final action taken by the Council, the organism entrusted to exercise the university's functions. *See* Title 18 Section 602(f)(1). The remedy requested, although technically implemented by the Chancellor,[12] has to be followed by all defendants. Plaintiff's contention that the parties are not identical would perhaps be valid if these officials were being sued in their personal capacities for acts done beyond their official scope of duties. The fact that the claims before us are brought against them in their official capacities as representatives of the University of Puerto Rico and that they would have been jointly bound by an adverse ruling from the Superior Court, not only because of their representative capacity but in view of the nature of the prestation

itself which had to be implemented uniformly by all the different divisions and departmental heads involved, clearly points the only party in both the administrative and the judicial proceedings. *See: Kutzik v. Young*, 730 F.2d 149, 152 (4th Cir.1984); *Local 1006, A.F.S.C.M.E., AFL–CIO v. Wurf*, 558 F.Supp. 230, 234 (N.D.Ill.1982) *aff'd.* 746 F.2d 1483 (7th Cir.1984); *Howkins v. Caldwell*, 587 F.Supp. 98, 103 (N.D. Ga.1983) *aff'd.* 749 F.2d 731 (11th Cir.1984) *and see also: Futura Development Corp. v. Centex Corp.*, 761 F.2d 33, 43–44 (1st Cir.1985); *Pan American Match, Inc. v. Sears Roebuck & Co.*, 454 F.2d 871, 874 (1st Cir.1972) *cert. denied* 409 U.S. 892, 93 S.Ct. 113, 34 L.Ed.2d 149 (1972); and *Nesglo, Inc. v. Chase Manhattan Bank, N.A.*, 562 F.Supp. 1029, 1038–40 (DPR 1983), *aff'd., mem.*, No. 81–1097 (1st Cir. Mar. 4, 1983).

As to the requirement of identity of "things or causes," the Supreme Court of Puerto Rico has said that the "thing" is "the object or matter over which the action is exercised" *Lausell Marxuach*, Vol. 3, *Official Translations* at 745 (1975), while cause is the " 'the principal ground, the origin of the actions or exceptions raised and decided, and it must not be mistaken for the means of proof nor for the legal grounds of the claims adduced by the parties.' " *Id.* at 746. The court has also indicated "that if the things and causes are identical, the efficacy of the res judicata is not hindered by the fact that the action is given a different name, without the basic identity of the presumption disappearing because a different request was made in the second trial, which had not been decided in the first...." *A & P Gen. Contractors v. Asoc. Caná, Inc.*, 10 *Official Translations of the Opinions of the Supreme Court of Puerto Rico*, 983, 998–99; 110

---

**12.** The Chancellor is responsible for the appointment and removal of teaching personnel within his campus with the advice of the University Board and subject to the review of the Council. *See: González-Saldaña v. Superior Court*, 92 PRR 462, 470–71 (1965). Since the Chancellor is the person directly responsible for enforcing a judgment in a suit of this kind, he is generally sued. This does not mean that the Chancellor is an officer who is separate and distinct from the University of Puerto Rico. The University Act clearly disputes this and there is no doubt that his official acts are made on behalf and as representative of the institution.

DPR 753 (1981). In this case the thing or object of the litigation, plaintiff's position at the Physiology Department, was the same thing over which the previous proceedings were held. The "cause" of the previous proceedings, the transfer, is also present and being litigated now. Although in the previous proceedings the statutes and sections of the constitution allegedly violated were not treated as specifically as in the present case, the origin of the matters raised was the same. *See: Lausell Marxuach,* Vol. 3 at 746; *A.A.A. v. Beléndez,* 98 PRR 506, 510–13 (1970) *and gen. Futura,* 761 F.2d at 44–45. It should also be noted that res judicata has been interpreted in Puerto Rico to reach those matters which could have been raised in prior proceedings. *Mercado-Riera v. Mercado-Riera,* 100 PRR 939, 949 (1972); *see also Migra,* 104 S.Ct. at 896–98. Puerto Rico courts may examine alleged violations of federal constitutional rights. *See: Ramirez Pluguez v. Cole,* 571 F.2d 70 (1st Cir.1978); *Acevedo v. Secretario Servicios Sociales,* 112 DPR 256 (1982). The Constitution of Puerto Rico prohibits any type of discrimination on account of sex, P.R. Const. Art. II Section 1 and in the employment context this prohibition has been interpreted as sufficiently ample to cover federal law concerns. *Zachry International of P.R. v. Superior Court,* 4, *Official Translations of the Opinions of the Supreme Court of Puerto Rico,* 380, 394 (1975).

█ In any event, the "borrowed" Anglo-Saxon doctrine of collateral estoppel also applies and precludes litigating those findings of fact made by the agency which are crucial in resolving the claims in this case, *see: Long Corporation v. District Court,* 72 PRR 737, 739 (1951), namely:

that the reason given for the transfer and the conditions of the new position showed that the Chancellor's decision was not arbitrary, retaliatory or discriminatory.

█ Finally, plaintiff suggests that the application of res judicata to her situation will result in a terrible injustice. The doctrine of res judicata should not be strictly applied when it will defeat the ends of justice. *Negrón-Marrero v. C.I.T. Financial Services Corp.,* 111 DPR 657, 661 n. 2 (1981). In the administrative context res judicata is said to be applied with great flexibility to prevent injustice *id.* and *Pagán-Hernández,* 107 DPR at 731. Although aware of the laudable principles behind this exception, we cannot apply it indiscriminately. The doctrine of res judicata also responds to other equally important principles, particularly in the federal-state power adjudication design. *See: Kremer,* 102 S.Ct. 1895–96 at 1898. In the situation before us there is no reason to apply this exception. There is no irregularity or inequity in the proceedings available to plaintiff at the administrative or judicial levels. In fact, she was afforded much more in the nature of due process than that given to Kremer.[13] Prima facie, we also fail to find that the examining officer's decision was erroneous or capricious. The conduct of the Dean and the Chancellor, sued only in their official capacity, appears to be reasonable and without trace of discriminatory motivation or arbitrariness. These persons, were not sued for the actions they allegedly took against plaintiff for personal motives. Given this record and plaintiff's generalized allegations of constitutional violations, the substantiality of her constitutional action dilutes enormously. A close review of her constitutional claims which consist of being deprived of

---

**13.** Contrary to plaintiff's assertions, she was not judged by the same persons who she complains violated her constitutional rights. She was given a full panoply of procedures during which her allegations were independently scrutinized at different levels beyond the Chancellor's decision and by different individuals. She was given the opportunity to present her case at a three-day evidentiary hearing, represented by counsel at all times. A record of the proceedings was made and given to her attorney. She was given time to present her position not only to higher independent administrative bodies but to the Superior Court itself which declined to dismiss her petition summarily. Although plaintiff does not challenge these proceedings on grounds of the *Kremer* lack of due process exception to the application of issue and claim preclusion, we note that the proceedings afforded plaintiff fully met due process concerns.

attending faculty meetings at the department of her choice [14] to voice some undefined opinions, the context of which are still unknown; *cf. Hughes v. Whitmer,* 714 F.2d 1407 (8th Cir.1983) *cert. denied,* — U.S. —, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); *Roseman v. Indiana Univ. of Pennsylvania at Indiana,* 520 F.2d 1364 (3rd Cir.1975) *cert. denied* 424 U.S. 921, 96 S.Ct. 1128, 47 L.Ed.2d 329; *Clark v. Holmes,* 474 F.2d 928 (7th Cir.1972) *cert. denied* 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (transfers held not to violate first amendment rights because context of speech not in public interest or protected matters). *See also Santos v. Miami Region, U.S. Customs Serv.,* 642 F.2d 21, 25 (1st Cir.1981) and in being transferred to a closely related academic field where she will conduct work related to her expertise, in the same building, with practically the same students and with no change in salary, location or other incidents of employment *cf. Smith v. West Memphis School Dist.,* 635 F.2d 708 (8th Cir.1980) (no constitutional violation when principal was transferred to another elementary school since there was no claim of entitlement to that specific position) *see also: Moore v. Otero,* 557 F.2d 435 (5th Cir.1977); *Sullivan v. Brown,* 544 F.2d 279 (6th Cir.1976); *Danno v. Peterson,* 421 F.Supp. 950 (N.D.Ill.1976) *see also: Alicea-Rosado v. Garcia-Santiago,* 562 F.2d 114 (1st Cir.1977), reveal that they are of dubious legal merit.

 There is no reason to give plaintiff a second chance to rehash the matters she was given ample opportunity to present and in fact did litigate before the Puerto Rican agency and the Superior Court of Puerto Rico. If she wanted to reserve her federal rights so that they would be adjudicated by this forum, she should have informed the Superior Court of the pendency of this litigation. Instead she decided to pursue her case before that court and gamble on the chance that one of the two forums would rule favorably. The fact that she lost in the first forum that is not an injustice but only the consequence of a risk that she took. Principles of res judicata, collateral estoppel and comity preclude us from ignoring the time and effort dedicated to these prior proceedings. They should not be shorn of their proper adjudicative validity just because a party's litigation strategy went sour. For these reasons the complaint is DISMISSED.

SO ORDERED.

---

**14.** She may attend the faculty meetings of the department she was transferred to.