**TEXACO PUERTO RICO, INC.,**
Plaintiff, Appellee,

v.

**Jose MEDINA, etc., et al.,**
Defendants, Appellants.

No. 87–1324.

United States Court of Appeals,
First Circuit.

Heard Oct. 7, 1987.
Decided Dec. 4, 1987.

Harry Anduze–Montano, San Juan, P.R., for defendants, appellants.

Igor Dominguez, with whom William Estrella Law Offices, San Juan, P.R., was on brief, for plaintiff, appellee.

Before BOWNES, Circuit Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

TIMBERS, Circuit Judge:

Appellants Jose Medina and his wife, Carmen Gomez, individually and as representatives of their conjugal partnership, appeal from a judgment entered February 24, 1987 in the District of Puerto Rico, Carmen Consuelo Cerezo, *District Judge*, granting appellee Texaco Puerto Rico, Inc. ("Texaco" or "appellee") voluntary dismissal of its declaratory and monetary action which charged that appellants violated their lease of a gasoline station, and entering summary judgment for Texaco on appellants' counterclaims. The court held, first, that Texaco could dismiss its action as moot because the Superior Court of Puerto Rico had held in a prior unlawful detainer proceeding that Texaco could evict appellants based on their statutory and contractual breach; second, that appellants' first counterclaim based on Texaco's alleged violations of the contract was barred by res judicata and collateral estoppel; and, third, that appellants' second counterclaim, which alleged that Texaco violated the antitrust laws, was conclusory and without merit. On appeal, appellants challenge the dismissal of their counterclaims, contending that the court's application of res judicata was contrary to Puerto Rico law and that there were disputed facts regarding the antitrust counterclaim.

We hold that we do not need to rule on res judicata because the narrower ground of collateral estoppel by judgment precludes relitigation of this issue. We further hold that appellants' second counter-

* Of the Second Circuit, sitting by designation.

claim is conclusory and without merit. We affirm.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Texaco, a petroleum distributing company, contracted to lease a gasoline station to appellants on December 13, 1963. On September 17, 1975 the parties signed another contract for use of building property owned by Texaco on the same premises. In 1978, Congress enacted the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq.* (1982), to regulate the relationship between a gasoline station dealer and a petroleum distributing company which was to be treated as a franchise.

On January 13, 1983, Texaco sent appellants a termination notice that stated that they were violating their franchise agreement and the PMPA by willfully selling adulterated or non-Texaco brand fuel as if it were Texaco fuel, failing to pay rent, and not operating the station in good faith. Appellants refused to vacate.

At this point, the scenario becomes complicated. As a result of appellants' refusal to vacate after continuing to breach the contract, Texaco commenced a number of legal proceedings involving three legal forums: (a) an action for eviction in the Puerto Rico Superior Court; (b) an action for declaratory judgment in federal district court; and (c) an action for damages in the superior court.

### A.

On November 15, 1983, Texaco commenced an action for eviction for unlawful detainer, a special summary proceeding under Puerto Rico law, in the Superior Court of Puerto Rico, Humacao Part (the "Superior Court"). Texaco alleged that appellants should be evicted for violating their franchise agreement and the PMPA as stated in the termination notice. On the day of trial, appellants answered, asserting affirmative defenses and counterclaims. Their affirmative defenses included one which alleged that Texaco was estopped and had waived its claims of selling and mislabelling fuel not bought from Texaco because of its prior consent to such purchases, and one which alleged that Texaco had unclean hands. Their counterclaims alleged that Texaco had violated the contract and had commenced an unfounded legal action, and that Texaco had committed antitrust violations. Appellants also moved to join Texaco, Inc., a Delaware corporation, as an additional defendant and to dismiss for lack of jurisdiction. Both motions were denied, but the filing of the answer and affirmative defenses was approved. The court struck the counterclaims because appellants filed them so late in the proceeding and because of the special nature of the unlawful detainer proceeding. Nevertheless, the Superior Court specifically instructed appellants that they could present all relevant evidence to prove their affirmative defenses. Despite this, after Texaco concluded its presentation of its case, appellants stated that they would not present any evidence. On Texaco's motion, the court ruled that there would be an adverse presumption of evidence against appellants based on Rule 16, subsection 5 of the Puerto Rico Rules of Evidence of 1979. This Rule states "[t]hat evidence willfully suppressed would be adverse if produced."

After a four day trial, the Superior Court entered judgment for Texaco on August 30, 1984 and ordered the eviction of appellants. Appellants also were assessed attorney's fees for their "obstinate" behavior.

### B.

Texaco commenced the instant litigation in the federal district court on March 7, 1984 before the conclusion of the prior Superior Court action. Texaco requested a declaratory judgment terminating the franchise agreement and an award of damages. Appellants asserted affirmative defenses and counterclaims[1] basically identical to

---

1. The counterclaims also were asserted against Texaco, Inc. On July 20, 1984 the magistrate denied the motion to join Texaco, Inc. On November 21, 1984 the district court ordered

those they had asserted in the Superior Court action. After the Superior Court had entered judgment in favor of Texaco in the eviction proceeding, Texaco moved in the district court on June 14, 1985 for voluntary dismissal of its complaint, for summary judgment in its favor on appellants' PMPA and breach of contract counterclaim based on res judicata and for summary judgment in its favor on appellants' antitrust counterclaim for failure to show a genuine issue as to any material fact. Appellants opposed Texaco's motions.

In a report filed April 23, 1986, the magistrate recommended dismissal of the action and found in favor of Texaco in all respects. The district court approved the magistrate's recommendations, dismissed the complaint and entered summary judgment in favor of Texaco on the counterclaims. The court found (1) that Texaco's complaint was now moot; (2) that, although the magistrate apparently dismissed the PMPA and contractual counterclaim on the doctrine of res judicata based on common law instead of Puerto Rico's civil law, his conclusions were supported by the doctrine of res judicata as developed by Puerto Rico; (3) that, even if res judicata was inapplicable, collateral estoppel barred relitigation of appellants' counterclaims relating to the franchise agreement and violations of PMPA; and (4) that the antitrust allegations were conclusory and without merit.

### C.

To confuse things further, Texaco commenced a third action on July 18, 1984 in the Superior Court of Puerto Rico, Humacao Part. Texaco claimed damages for appellants' breach of the franchise agreement. In view of the special nature of the unlawful detainer proceedings, whose purpose was only to determine eviction, damages could not have been claimed in the initial action. Once again, appellants asserted the same affirmative defenses and counterclaims. Texaco moved for dismissal on the same grounds as in the federal

stricken all allegations and counterclaims

action—res judicata and collateral estoppel. The Superior Court denied the motion. Texaco appealed. The Supreme Court of Puerto Rico denied certiorari. This third action was set for trial on October 6, 1987.

### II.

We turn next to the legal issues raised. The primary issue on appeal is whether the court properly held that appellants' first counterclaim—alleging that Texaco violated the contract and the PMPA—was barred by the preclusive doctrines of res judicata or collateral estoppel. Another subordinate issue is raised.

■ It is well established that state law is controlling in determining the preclusive effect to be given a state judgment in a federal court. *Migra v. Warren City School District Board of Educ.*, 465 U.S. 75, 81 (1984). "Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466 (1982) (footnote omitted). We therefore must examine Puerto Rico law.

### A. *Res Judicata*

In Puerto Rico, the doctrine of res judicata or "claim preclusion" is codified. Article 1204 of the Civil Code, 31 L.R.P.A. § 3343, requires "the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." We do not need to rule on the application of res judicata since collateral estoppel by judgment defeats appellants' counterclaim.

### B. *Collateral Estoppel by Judgment*

■ Collateral estoppel by judgment forecloses relitigation in a subsequent action of a fact essential for rendering a judgment in a prior action between the same parties, even when different causes of action are involved. *A & P Gen. Contractors, Inc., 10 Off. Translations Su-*

against Texaco, Inc.

*preme Court of Puerto Rico Opinions* 983, 996, 110 D.P.R. 753 (1981). Although the development of the doctrine of collateral estoppel by judgment in Puerto Rico has varied—with some courts treating it as an independent concept while others have considered it as a modality of res judicata—this concept nevertheless has always been considered a variant of res judicata in which identity of causes is not necessary. *Id.* Our analysis, therefore, necessarily must focus on the initial action in the Superior Court as compared with the subsequent counterclaim in the federal district court.

At the outset we acknowledge that in the third proceeding (in the Superior Court of Puerto Rico), involving similar facts and a similar counterclaim, the Superior Court denied Texaco's motion for summary judgment based on res judicata and collateral estoppel. The Supreme Court of Puerto Rico denied certiorari. We do not know the reasons for the Superior Court's summary decision. We nevertheless hold that collateral estoppel by judgment applies.

 In the instant case, it is clear that the parties in the district court are identical to and are acting in the same capacity as the parties involved in the initial proceeding in the Superior Court. In determining the requirement of identity of things, we must look to " 'the object or matter over which the action is exercised.' " *Futura Development Corp. v. Centex Corp.*, 761 F.2d 33, 44 (1st Cir.1985) (quoting *Lausell Marxauch v. Diaz de Yanez*, 103 D.P.R. 533 (1975) (translation provided without page reference)). The test is whether the court, in deciding the second litigation, would contradict a prior decision litigating a right. *A & P Gen. Contractors, Inc. v. Asoc. Cana, Inc., supra*, 10 *Off. Translations* at 998, 110 D.P.R. at 765. The summary eviction proceeding was based in part on rights arising from the franchise agreement, also at issue in the counterclaim. Deciding appellants' counterclaim in their favor necessarily would enforce

rights arising from a contract that the Superior Court found was breached by them.

The unlawful detainer proceeding was final and on the merits. Appellants had a full and fair opportunity to litigate. Their failure to present any evidence was their own choice, since the court specifically had instructed them that all evidence relevant to the affirmative defenses could be presented. The Superior Court in the initial eviction proceeding filed a lengthy and careful opinion after a four day trial. In its opinion, the court explicitly stated that the evidence presented established "beyond any doubt" a number of facts. These included the facts that appellants sold misbranded gasoline; that appellants had failed to pay their rent; and that a survey of gasoline stations in the same area where appellants' station was located, including three other Texaco stations, indicated that appellants sold gasoline at the highest price. Collateral estoppel by judgment indeed would apply regardless of whether the court in the first proceeding explicitly found certain facts if such findings were necessarily indispensable to the conclusion reached. *Long v. District Court*, 72 P.R. R. 737, 739 (1951). It must certainly apply, therefore, where a court makes its findings explicit.

The Superior Court necessarily had to consider, and expressly did consider, whether appellants and appellee had violated the franchise agreement and the PMPA. Since these were indispensable facts that were necessarily included in ascertaining the right of Texaco to evict, the judgment was a binding adjudication to that effect. Indeed, appellants conceded at oral argument before us that, in determining the first action, the Superior Court had to find that appellants violated the lease or it could not have held for Texaco.

Accordingly, we hold that appellants' first counterclaim, alleging that Texaco violated the franchise agreement and the PMPA, is barred by collateral estoppel by judgment.[2]

---

2. Appellants also argue that no preclusive effect should be given to the first judgment because of the Puerto Rico policy exception that this would defeat the ends of justice. This argument is without merit.

Appellants had access to a fair forum, were represented by counsel, and were explicitly given the opportunity to raise those defenses necessary to meet Texaco's allegations of breach of contract. The Superior Court had to make com-

### III.

This brings us to the alleged antitrust violations. We find them to be without merit and completely frivolous.

Appellants basically alleged that Texaco, as a monopoly, instituted a pricing system that manipulated the market and controlled distributors, resulting in an anticompetitive effect. We agree with the district court that appellants' conclusory allegations were insufficient to defeat Texaco's motion for summary judgment, and that what modicum of factual elements could be extracted from the conclusory pleadings did not support an antitrust cause of action.

■ On appeal, appellants argue that when antitrust violations are involved the summary judgment standard is more stringent than in other cases, and that Texaco had the burden of proving that no inference of monopoly power is possible. Appellants misconstrue the law. The Supreme Court clearly has placed the burden on the movant to come forward with evidence to prove the essential elements of the cause of action. *Celotex Corp. v. Catrett*, 477 U.S. 317, —— (1986). Fed.R. Civ.P. 56(e) requires that "[w]hen a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading ... [T]he adverse party's response ... must set forth specific facts showing that there is a genu-ine issue for trial." There is Supreme Court dictum that summary judgment procedures, specifically as applied to *complex* antitrust cases, should be used cautiously when motive and intent are integral elements of the cause of action. *See Poller v. C.B.S.*, 368 U.S. 464, 491 (1962). Although *Poller* has not been overruled, the courts, including the Supreme Court, now more freely approve the granting of summary judgment in antitrust cases. *See, e.g., Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752 (1984); *Amnook Enterprises v. Time Inc.*, 612 F.2d 604, 622–23 (2d Cir. 1979), *cert. denied*, 448 U.S. 914 (1980). Our Court specifically has rejected special summary judgment treatment in antitrust cases, holding that the particular circumstances involved are what control. *White v. Hearst Corp.*, 669 F.2d 14, 17 (1st Cir. 1982). Although appellants were entitled to all favorable *reasonable* inferences supported by the record, their own unsupported assessment of the situation is insufficient to raise a genuine issue of material fact. *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 289–90 (1968).

■ Moreover, as the district court indicated, the few factual elements which could be extracted from the conclusory pleadings did not support an antitrust violation.[3] Appellants' allegation that Texaco did not de-

---

plete findings of fact on the contract to determine if eviction was warranted. The trial lasted four days, even though only Texaco presented evidence. Finally, as the district court in the instant case stated, the Superior Court's findings revealed contractual violations implying fraud not only against Texaco but against the general public that possibly could constitute a violation of criminal laws. As the District Court of Puerto Rico held in another setting, "[t]here is no reason to give [appellants] a second chance to rehash the matters [they were] given ample opportunity to present ... before the Superior Court of Puerto Rico." *Stitzer v. University of Puerto Rico*, 617 F.Supp. 1246, 1260 (D.P.R. 1985).

3. Appellants argue that the district court erroneously failed to consider their request for admissions. Although Texaco objected to the request, the court never ruled on the objection. Texaco never answered the request. Relying on Texaco's failure to answer, appellants argue that the matters set forth should be considered admitted under Fed.R.Civ.P. 36, thus defeating summary judgment. What appellants ignore is that once Texaco timely objected to the request, which appellants concede it did, the burden then shifted to appellants. Once the party receiving the request for admissions objects, "[t]he next step is left to the party serving the requests. If he is satisfied that the objections are well taken, he may do nothing. If he wishes to challenge the sufficiency of the objections, ... he may move for such a determination." 4A Moore, Lucas and Epstein, *Moore's Federal Practice* ¶ 36.06, at 66 (1987); *see also Brown v. P.S. & Sons Painting, Inc.*, 680 F.2d 1111, 1114–15 (5th Cir.1982).

liver the quantity of gasoline contracted for can be summarily dismissed. The Superior Court in the initial proceeding found that Texaco did not breach the contract and that it was entitled to terminate the contract. Appellants' allegations concerning Texaco's pricing arrangement also fail. It is merely a promotional plan. Under the arrangement, Texaco sells gasoline to its dealers at prices over the prevailing market gasoline price, with a rebate for sales below market price if certain amounts are sold. Appellants do not allege nor could they prove how Texaco would be liable for appellants' inability to sell enough to qualify for the rebate. Texaco's rebate policies did not control, either directly or indirectly, appellants' selling price. On the contrary, as we observed in *Butera v. Sun Oil Co.,* 496 F.2d 434, 437 (1st Cir.1974), the appellant there "remains free to reduce his margin and try to make more money by underselling his competitors, or he may increase his margin knowing that he will lose sales but hoping to maximize his profit because of the greater per sale income."

### IV.

To summarize:

We hold that a prior judgment by the Superior Court of Puerto Rico precluded relitigation of Texaco's alleged breach of contract claim under the doctrine of collateral estoppel by judgment. Thus, it is unnecessary for us to rule on whether the doctrine of res judicata applies. We also hold that appellants' antitrust claim was not a bar to granting Texaco's motion for summary judgment; their allegations were conclusory only, and the few facts gleaned did not support an antitrust cause of action.

Affirmed.