USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-1850

 BERTA BAEZ-CRUZ, ET AL.,

 Plaintiffs, Appellants,

 v.

 MUNICIPALITY OF COMERIO, ET AL.,

 Defendants, Appellees.

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Salvador E. Casellas, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Campbell, Senior Circuit Judge, 
 
 and Boudin, Circuit Judge.
 
 

 Charles S. Hey-Maestre with whom Adalina De Jesus-Morales was
on brief for appellants.
 Francisco San Miguel Fuxench, with whom Miguel Pagan was on
brief for appellee, Municipality of Comerio.
 Sigfredo Rodriguez-Isaac, Assistant Solicitor General, with
whom Carlos Lugo Fiol, Solicitor General, Edda Serrano Blasini,
Deputy Solicitor General, were on brief for individual appellees.

March 31, 1998

 CAMPBELL, Senior Circuit Judge. Plaintiffs-appellants
Berta Baez-Cruz and twenty-three of her former co-workers brought
this action in the district court under 42 U.S.C. 1983 against
the municipality of Comerio, Puerto Rico, and four of its
officials. Plaintiff-appellants alleged that their dismissal from
municipal employment was based on their political affiliation in
violation of the First and Fourteenth Amendments and the laws of
Puerto Rico. Previously, Plaintiffs had sought reinstatement by
the Puerto Rico administrative body that handles government
employment disputes. That body denied relief to Plaintiffs in a
decision that the Puerto Rico Supreme Court ultimately affirmed.
 Following the Puerto Rico Supreme Court's affirmance, the
district court granted Defendants' motion for summary judgment. It
reasoned that Plaintiffs were collaterally estopped from arguing
that their dismissal was politically based by a contrary finding in
the Commonwealth proceedings. Plaintiffs have appealed. The
question we face is whether, under Puerto Rico law, the
administrative body's findings preclude relitigation of Plaintiffs'
termination. We affirm.
 FACTS
1. Tension Between Comerio Municipal Employees and the New
 Comerio Administration

 In 1992, the citizens of Comerio elected Defendant Luis
Rivera Rivera ("Rivera"), a member of the New Progressive Party
(the "NPP"), as their Mayor. That election ended a half-century of
rule in Comerio by the Popular Democratic Party (the "PDP"). Other
members of the NPP administration included Defendant Domingo
Marcano, Internal Auditor; Defendant Rufino Ayalo, Director of
Public Works; and Defendant Damian Rivera, Director of Civil
Defense. Plaintiffs, all members of the rival PDP, were career
municipal employees. 
 The months following Rivera's assumption of the mayoral
post were marked by tension between the municipality and its
employees. In their complaint, Plaintiffs alleged that they
perceived the new administration to be discriminating against PDP
holdovers by subjecting them to sudden transfers, threats, and
revocation of privileges. Plaintiffs and other employees protested
this perceived mistreatment by declaring a one-day work stoppage. 
The Municipality admonished the protesters and withheld their pay
for the strike day. 
 After Mayor Rivera refused to negotiate, Plaintiffs and
those in agreement declared another strike, which directly led to
their dismissal. The dismissed employees announced a four-day work
stoppage, with a protest on the first day in front of City Hall. 
Mayor Rivera responded by activating, through Defendant Damian
Rivera, the municipality's civil defense to provide Comerio with
essential services. Plaintiffs and their fellows saw the civil
defense forces as strikebreakers. The City Hall protest led to
physical and verbal confrontations between the civil defense force
and the strikers.
 Following the work stoppage, the municipality
investigated the strike, which, the parties agree, violated Puerto
Rico law forbidding municipal employees to strike. The
municipality's auditor, Defendant Domingo Marcano, reviewed the
municipality personnel department's attendance records to determine
who participated in the strike. The Municipality then informed
forty-eight employees of their dismissal. 
2. The Administrative Proceedings
 The forty-eight terminated employees immediately
requested a hearing before the Puerto Rico Personnel Administration
Systems Appeal Board (known by its Spanish acronym, "JASAP"), the
administrative body that handles government employment disputes. 
See P.R. Laws Ann. tit. 3, 1394(1). JASAP's examining officer
recommended that only those employees who could be identified as
having participated in the strike be terminated. The investigation
positively identified only the twenty-four Plaintiffs in this
action. The municipality quickly reinstated the other twenty-four
employees, but refused to reinstate the twenty-four Plaintiffs. 
 Plaintiffs contested the examiner's recommendations
before the JASAP. JASAP upheld the examiner, adopting her findings
of fact and conclusions of law. As a "Conclusion of Law," the
examining officer's report stated that,
 The appellant party [the strikers-
 Plaintiffs] brought to our consideration that
 the dismissal was due to reasons of political
 ideology. It arises from evidence that all
 the employees who participated in the strike
 belonged to the [PDP]. (Findings of Fact No.
 23) Nevertheless, once the administrative
 hearings were held not all the forty-eight
 (48) employees who participated in [the]
 strike were dismissed, but twenty-four (24)
 employees. There were twenty-four "Populares"
 [i.e., members of the PDP] who were reinstated
 after the administrative hearing with the
 discount of the day.
 
 3. The 1983 Action
 On the same day that JASAP denied Plaintiffs' motion for
reconsideration, Plaintiffs brought the instant action under 42
U.S.C. 1983 in the United States District Court for the District
of Puerto Rico. The complaint alleged that the terminations and
prior disciplinary measures violated Plaintiffs' rights conferred
by the Federal Constitution to free expression and association,
equal protection of the law, and procedural due process. Also
included within the federal complaint were claims under the law of
the Commonwealth of Puerto Rico. Defendants filed their answer,
and, based on the JASAP Report's findings, they moved for summary
judgment. 
 The district court stayed the proceedings, including
discovery, while Plaintiffs appealed from the JASAP decision to the
Puerto Rico courts. Plaintiffs' appeal was rebuffed at every turn. 
The Superior Court, the Circuit Court, and, ultimately, by a 3-2
decision, the Supreme Court of Puerto Rico each affirmed JASAP's
decision. 
 Soon after the Supreme Court of Puerto Rico rendered its
decision, the district court granted Defendants' motion for summary
judgment. The district court held that JASAP's determination "that
[in the court's words] the sole reason for plaintiffs' dismissal
was their participation in an illegal strike," collaterally
estopped Plaintiffs' political discrimination claim. The district
court also held that Plaintiffs failed to demonstrate a genuine
issue of material fact in their procedural due process claim, and
then dismissed without prejudice the remaining claims under Puerto
Rico law. 
 Plaintiffs filed a Rule 59(e) motion to vacate and/or to
amend the judgment, arguing that Puerto Rico's rules of collateral
estoppel did not preclude relitigation of a factual issue unless
the parties in the second suit were identical to the first. The
individual officials, defendants here, were not parties to the
JASAP proceeding. Thus, Plaintiffs argued, the JASAP decision
could not collaterally estop a claim involving these new parties. 
The district court rejected this contention, and this appeal
followed.
 DISCUSSION
1. Background
 To survive summary judgment in a case alleging
unconstitutional political discrimination in public employment, an
employee must produce evidence that her political affiliation was
a "substantial" or "motivating" factor behind the challenged
employment decision. Mount Healthy City Bd. of Educ. v. Doyle, 429
U.S. 274, 287 (1977); see also Rodriguez-Pinto v. Tirado-Delgado,
982 F.2d 34, 39 (1st Cir. 1993). Even if such a link is shown
between political affiliation and the adverse employment action,
the employee's claim will still fail if the employment decision
would have occurred regardless of plaintiff's political
affiliation. See Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir.
1993). 
 Here, the district court accurately described the JASAP
proceedings as establishing "that the sole reason for Plaintiffs'
dismissal was their participation in an illegal strike." The JASAP
examiner expressly rejected Plaintiffs' contention that "the
dismissal was due to reasons of political ideology," reasoning that
the municipality reinstated twenty-four of the forty-eight
originally dismissed workers (all of whom shared the same party
affiliation) after the hearing examiner had found no proof of their
participation in the strike. The Puerto Rico Supreme Court noted
this finding in affirming the JASAP decision and concluded that
"JASAP did not err when it decided that the action of dismissal of
petitioners herein was within the legal frame of action permissible
of the municipality." It would not have been permissible for JASAP
to have determined that Plaintiffs' termination was lawful under
the "merit principle" of Puerto Rico's Personnel Law, P.R. Laws
Ann. tit. 3, 1331, if it had found the termination was based on
Plaintiffs' political affiliation. See Diaz de Llovet v. Governor,
112 P.R. Offic. Trans. 941, 953-54 (1982) (discussing Branti v.
Finkel, 455 U.S. 507 (1980)). A finding for Plaintiffs in the
present action would, therefore, necessarily contradict JASAP's
prior determination that the dismissals were not based on "reasons
of political ideology" but rather on the strike, as affirmed by the
Puerto Rico Supreme Court. 
 The Full Faith and Credit statute, 28 U.S.C. 1738,
provides that "judicial proceedings . . . shall have the same full
faith and credit in every court within the United States and its
Territories . . . as they have by law or usage in the courts of
such State [or] Territory . . . from which they are taken." It is
well-settled that a proceeding in a state court collaterally estops
inconsistent arguments in a later federal action, including actions
under 1983. Allen v. McCurry, 449 U.S. 90, 104-05 (1980). 
Preclusive effect is given not only to state judicial proceedings,
but also to facts found by a "state agency acting in a judicial
capacity [that] resolves disputed issues of fact properly before it
which the parties have had an adequate opportunity to litigate." 
University of Tenn. v. Elliott, 478 U.S. 788, 798 (1986). The
applicable collateral estoppel rules are not federally created, but
are those of the state from which the judgment is taken. Kremer v.
Chemical Constr. Corp., 456 U.S. 461, 481-82 (1982).
 These rules frame the central question in this appeal: 
whether the district court was correct in holding that Puerto
Rico's issue preclusion doctrine "bound [it] to accept those issues
which have already been litigated by the parties and adjudicated by
the J.A.S.A.P. Hearing Examiner" and affirmed by the Puerto Rico
courts. To answer this question in the affirmative requires both
that the collateral estoppel rules of Puerto Rico would preclude
the issue in a Puerto Rico court and that Plaintiffs had a "full
and fair opportunity to litigate" the factual claims. The district
court's grant of summary judgment is subject to our de novo review.
2. Issue Preclusion Under Puerto Rico Law
 Puerto Rico's doctrine of preclusion, codified at 31 P.R.
Laws Ann. tit. 31, 3343, provides in pertinent part:
 In order that the presumption of res judicata
 be valid in another suit, it is necessary
 that, between the case decided by the sentence
 and that in which the same is invoked, there
 be the most perfect identity between the
 things, causes and persons of the litigants,
 and their capacity as such.
 
 Although the statute speaks of "res judicata," i.e., claim
preclusion, it also permits issue preclusion, or "collateral
estoppel by judgment." See Texaco Puerto Rico, Inc. v. Medina, 834
F.2d 242, 245-46 (1st Cir. 1987) (citing A & P Gen. Contractors v.
Associacion Cana, Inc., 10 P.R. Offic. Trans. 987, 995-96 (1981)). 
The district court here concluded that because the Puerto Rico
Supreme Court had affirmed JASAP's finding that Plaintiffs'
termination was not the result of political discrimination,
Plaintiffs were collaterally estopped from relitigating the issue
of political discrimination in a federal court.
 Plaintiffs attack this conclusion on several grounds,
which we consider in turn.
 A. Non-identity of Parties 
 Plaintiffs point out that the present action includes new
parties on both sides. First, the federal complaint added one new
plaintiff -- the spouse and conjugal partnership of an original
plaintiff. Second, and more significantly, the federal complaint
included as defendants the four municipal officials in their
individual capacities; they were not and could not have been
parties before JASAP. 
 The rather strict wording of Puerto Rico's mutuality
requirement is not a bar to appellees' defense. Although the
language of the provision calls for "the most perfect identity of
persons" between the first and second case, we have noted on a
number of occasions that the Puerto Rico courts do not read the
requirement literally. See, e.g., Futura Dev. Corp. v. Centex
Corp., 761 F.2d 33, 43 (1st Cir. 1985). The preclusion statute
itself goes on to provide that, 
 there is identity of persons whenever the
 litigants of the second suit are legal
 representatives of those who litigated in the
 preceding suit, or when they are jointly bound
 with them or by the relations established by
 the indivisibility of prestations [i.e., "a
 performance of something due upon an
 obligation" according to Webster's New
 International Dictionary 1796 (1971)] among
 those having a right to demand them, or the
 obligation to satisfy the same.
 
 P.R. Laws Ann., tit. 33, 3343. We have read this provision as
permitting issue preclusion to operate against a plaintiff who adds
defendants in the second action. See Futura, 761 F.2d at 43;
Republic Sec. Corp. v. Puerto Rico Aqueduct and Sewer Auth., 674
F.2d 952, 955-56 (1st Cir. 1982); cf. De Leon v. Colon, 42 P.R.R.
21, 27 (1931) (permitting preclusion based on previous action that
included additional defendants); Restatement (Second) of Judgments 51(1). The municipality and its officers share, in the words of
 3343, the "obligation to satisfy the same [claim]"; this shared
obligation is, under these circumstances, sufficient to allow
preclusion. "Identity of parties and interest is required so that
a party's rights and obligations will not be determined without
their knowledge or an opportunity for participation." Futura, 761
F.2d at 43. As Plaintiffs were themselves active participants in
the JASAP proceedings and the consequent appeals, their own
addition of the officer defendants will not defeat the defense of
collateral estoppel by judgment.
 B. Identity of Causes
 Plaintiffs' second challenge avers that the instant
action and the JASAP proceedings lack an identity of "causes," or
the factual predicate for relief. Plaintiffs argue that their 
1983 action involves a different cause because JASAP's jurisdiction
is limited to claims under Puerto Rico's Personnel Law. This
argument mistakes the legal cause of action for the factual "cause"
contemplated by Puerto Rico's preclusion statute: preclusion
requires an identity of the latter, not the former. As the Supreme
Court of Puerto Rico has explained, a "cause" includes "'the
principal ground, the origin or exceptions raised and decided, and
it must not be mistaken for the means of proof nor for the legal
grounds of the claims adduced by the parties.'" Lausell Marxuachv. Diaz de Yanez, 3 P.R. Offic. Trans. 742, 748 (1975) (quoting
VIII-2 Manresa, Comentarios al Codigo Civil Espanol 301 (6th ed.
1967)). The Supreme Court of Puerto Rico has also stated that
identity of causes is unnecessary when the defense is one of issue
preclusion, rather than claim preclusion. See A & P Gen.
Contractors, 10 P.R. Offic. Trans. at 996 (explaining that
"collateral estoppel by judgment" is "a variant of res judicata
where identity of causes is not necessary"). Even were collateral
estoppel by judgment to require an identity of causes, we would
have no trouble concluding that the two cases' identical subject
matter satisfied that requirement.
 C. Public Policy Exception
 The Puerto Rico courts have recognized an exception to
the doctrine of preclusion "whenever its application would defeat
the ends of justice, [e]specially in the presence of public policy
considerations." Pagan Hernandez v. University of Puerto Rico, 107
P.R. Offic. Trans. 795, 807 (1978). However, "[t]he mere
invocation of a constitutional right against an administrative act
is not a key which would automatically move [the court] to reject
the presumption of res judicata." Id. Plaintiffs argue that the
JASAP finding should not bind them in light of the public policy
favoring access to the federal courts to seek redress for
deprivations of constitutional rights. However, while employees
must exhaust their administrative remedies before bringing a
judicial action in the Puerto Rico courts, see Pierson Muller v.
Feijoo, 106 P.R. Offic. Trans. 1153, 1158 (1978), they were not
required to do so before bringing a 1983 action in federal court,
see Patsy v. Board of Regents, 457 U.S. 496, 515 (1982). 
Plaintiffs chose to proceed first in the JASAP before suing in the
federal courts; public policy does not require giving them a chance
to revisit that choice.
 D. Full and Fair Opportunity To Litigate
 Plaintiffs claim that the JASAP proceeding did not afford
them the "full and fair opportunity to litigate" required of any
decision later given preclusive effect. See Allen, 449 U.S. at 95. 
To meet this standard, "state proceedings need do no more than
satisfy the minimum procedural requirements of the Fourteenth
Amendment's Due Process Clause." Kremer, 456 U.S. at 481. 
 Plaintiffs' main proposition is that they were unable to
argue their federal constitutional claims before JASAP because the
Commonwealth administrative proceedings were restricted to
determining solely whether dismissal of Plaintiffs violated Puerto
Rico's Personnel Law. However, JASAP expressly considered and
rejected Plaintiffs' contention that they were dismissed "due to
reasons of political ideology," finding that the strike was
responsible for their dismissal. This factual issue is the basis
of Plaintiffs' federal constitutional claim. It is well-
established that judicially reviewed administrative fact-finding
may later estop a federal claim, even though the state
administrative body itself was unable to consider the federal claim
as such. See, e.g., Gonsalves v. Alpine Country Club, 727 F.2d 27,
28-29 (1st Cir. 1984). As in Kremer, Plaintiffs could not prevail
on their federal claim consistently with the prior finding of no
discrimination. See 456 U.S. at 479. Thus, JASAP's factual
conclusion may be given collateral estoppel effect regardless of
any inability by the administrative body to consider Plaintiffs'
federal constitutional claims.
 Finally, Plaintiffs point out that only one of the
twenty-four plaintiffs testified before JASAP; they allege no other
procedural defects in the JASAP proceedings. Certainly, the
ability to give evidence is a crucial factor in answering whether
a party has been afforded a full and fair opportunity to litigate. 
However, nothing in the record indicates that Plaintiffs' failure
to testify resulted from JASAP's refusal to allow them to do so. 
For all we can tell, they simply chose not to give evidence before
JASAP. See Lopez Vives v. Police, 8 P.R. Offic. Trans. 264, 278
(1987) (explaining that JASAP must honor "the right of an aggrieved
party to present all the evidence necessary to sustain his claim,
as well as to, orally or in writing, rebut the evidence brought
against him"). On the present record, this argument is undeveloped
and ultimately insufficient to raise any issue of the denial of due
process. Cf. United States v. Zannino, 895 F.2d 1, 17 (1st Cir.
1990)("[I]ssues adverted to in a perfunctory manner, unaccompanied
by some effort at developed argumentation, are deemed waived").
 The judgment is affirmed. Costs to appellees.