Howard Keith MAYLE, Plaintiff,

v.

**LABORER'S INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 1015, et al., Defendant.**

No. C87–278–A.

United States District Court,
N.D. Ohio, E.D.

Dec. 30, 1987.

David Van Gaasbeek, Canton, Ohio, for plaintiff.

Susan M. Sacks, Connerton & Bernstein, Washington, D.C., for Laborer's Intern. Union of North America.

Lawrence M. Oberdank and Randall Weltman, Cleveland, Ohio, for Laborer's Intern. Union of North America, Local 1015, Croston and Mayle.

## ORDER

BELL, District Judge.

Plaintiff Howard Mayle filed a complaint in this matter under the court's jurisdiction as conferred by the Labor Management Reporting and Disclosure Act of 1959, (LMRDA). 29 U.S.C. §§ 411(a)(2), (5), 412, 529. Named defendants are Laborer's International Union of North America (International Union); Laborer's International Union of North America, Local 1015 (the Local); Jacob Lee Croston and Michael Mayle, officers of the Local. Plaintiff alleges that he was expelled from the Local, a decision affirmed by the International Union, on the basis of spurious charges instigated in reprisal for plaintiff's statements and conduct during the Local elections in 1985. He alleges further that the Local's executive board was unfairly biased against him. He seeks reinstatment to membership, compensatory damages of $100,000.00 and punitive damages of $1,000,000.00.

There are currently three motions for summary judgment pending before the court: one filed by plaintiff; one filed by the Local and individual defendants; and one filed by the International Union. Responses have been filed to all motions.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that as a matter of law, it is entitled to summary judgment. In reviewing a motion for summary judgment, a court must consider the pleadings, related documents and evidence and all reasonable inferences in a manner most favorable to

the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979); *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *Board of Ed. Cincinnati v. Department of H.E.W.*, 532 F.2d 1070 (6th Cir.1976). The inquiry performed at this stage is whether a trial is required to resolve genuine factual issues. "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202, 212 (1986) (citations omitted). The facts drawn from the evidence submitted with these motions follow.

During the October, 1985 union elections plaintiff supported Sam Kennedy for an office he did not win. He believes that his subsequent expulsion was based in part upon his support of Kennedy. Plaintiff's Motion for Summary Judgment, Affidavit of Howard Mayle at ¶ 15. Plaintiff had been a member of the Local from his initiation in December, 1972 until his expulsion in 1986 except for intermittent periods when his dues were not paid. *See* Deposition of Howard Mayle at 3; Affidavit of Ann Welborn and Exhibit 3 attached.

During the period of plaintiff's membership, the Local was first chartered as Local 521. Affidavit of Ann Welborn, Exhibit 1. The charter was revoked in 1984 by the International Union and Local 521 was merged with Local 498. *Id.* A new charter was then issued for what became Local 1015. *Id.*

The Local is a laborer's union. As a laborer, plaintiff was referred by the Local to a number of contractor's job sites. His last assignment was to R.G. Smith in approximately 1985. Deposition of Howard Mayle at 4–5. He sustained an injury on that job which resulted in his inability to work thereafter and his receipt of worker's compensation. *Id.* at 4–7.

During the period when plaintiff could not work as a laborer, he agreed to assist

Sammy Kennedy, Bradford Croston, and Kim Mayle with a new organization, Laborer's Union for a Better America, Local 521. *Id.* at 8. Plaintiff became its business manager and in that capacity, spoke to contractors and laborers either on the telephone or during actual visits. *Id.* at 10–12. A letter announcing the formation of the new organization had been sent over his signature prompting the inquiries. *Id.* at 11, 58; Deposition Exhibit 1. Plaintiff carried a business card as business manager of the new Local 521. *Id.* at 31; Deposition Exhibit 2. Plaintiff admitted in his deposition that this card was a representation to the public that he was an official of Local 521 and had the authority to enter into contracts. *Id.*

The contract offered by Local 521 was substantially similar in wording and structure to the contract used by the Local. *Id.* at 44–46; *compare* Deposition Exhibit 4 *with* Deposition Exhibit 5. The rates for laborers was lower in Local 521's contract and the benefits for laborers were different. *Id.* at 45–50.

The Local sent plaintiff a notice on January 15, 1986, advising him that charges had been filed against him and that a hearing was set for February 1, 1986. *Id.* at 59; Deposition Exhibit 6. The charges filed against him by Charles Croston were included with the letter. *Id.* at 60; Deposition Exhibit 7. The charges were that plaintiff violated the Local's constitution, specifically Article III, section 3(a), (b), (c), (d), (g), by helping organize and promoting a labor organization designed to remove the Local as a provider of laborers to the construction industry. Plaintiff promptly looked up those provisions and had his response to each section typed to be submitted to the trial board as his defense. *Id.* at 62–63; Deposition Exhibit 9. Plaintiff did not retain an attorney or otherwise prepare for the hearing. *Id.* at 65. He did ask two witnesses, Sam Kennedy and Robert Mayle, to testify on his behalf but excused them when they told him that they had been verbally harassed. *Id.* at 66–70. Plaintiff also decided not to present witnesses because of the way he was treated

at the hearing. *Id.* at 72. At some point, plaintiff refused to answer questions posed to him by the trial board, *id.* at 74–76, and merely handed over his typed responses to the charges. *Id.* at 78.

Plaintiff believed that every one of the trial board members had had confrontations with him during the Local election in October, 1985, and that consequently they should not be sitting on the trial board. *Id.* at 79; Affidavit of Howard Mayle at ¶ 15. Plaintiff stated this position to the board at the outset of the hearing. Deposition of Howard Mayle at 82. He did not challenge the composition of the trial board prior to that time because he wanted to see what would happen and thought his only recourse was to appeal to the International Union. *Id.* at 80–84.

It was also plaintiff's belief that Ephraim Mayle, who had supported him in the past, was removed from the Local's executive board prior to his trial and replaced with a person who had opposed him. Affidavit of Howard Mayle at ¶ 16. Ephraim Mayle also believes that he was replaced on the executive board, which position would mean that he would sit on plaintiff's trial board, because he had expressed support for plaintiff and questioned the validity of the charges against him. Plaintiff's Motion for Summary Judgment, Affidavit of Ephraim Mayle at ¶ 7, 8, 11, 12. He believes he was replaced with William Mayle after hearing Roger Croston say that they chose him because he would vote for plaintiff's expulsion. *Id.* at 15.

Ephraim Mayle ran for an executive board position in the October, 1985 election after advising the Local judges of the election that he was in semi-retirement and needed to verify his eligibility under those circumstances. *Id.* at ¶ 3, 4, 5; Defendant Local's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Affidavit of Mike Mayle at ¶ 2. The executive board determined that his semi-retirement status would not affect his eligibility. *Id.* However, in November, 1985, after his election, it was discovered that Ephraim Mayle had submitted an application to receive pension funds. *Id.* at ¶ 3; Exhibit B.

This action prompted concern by the executive board that his continued status was in conflict with the constitutional prohibition against retired persons holding office. *Id.* at 4. The matter was discussed at the December, 1985 executive board meeting. Ephraim Mayle agreed to resign should it be officially determined that he was not qualified to hold office. *Id.* Mike Mayle, the secretary-treasurer, then wrote to the International for clarification of the issue. *Id.* at 5. On December 19, 1985, the general president of the International Union responded that the receipt of pension benefits was a factor to consider in the common sense evaluation of whether a member is retired. *Id.* at 5, Defendant the Local's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Exhibit C. The letter was read and discussed at the January, 1986 executive board meeting after which Ephraim Mayle agreed that he would have to resign. Affidavit of Mike Mayle at ¶ 6. Another matter decided at a January, 1986 special board meeting was the composition of the trial board to hear the charges against plaintiff. *Id.* at ¶ 7. Ephraim Mayle was present at this meeting and voluntarily withdrew from consideration for the trial board due to his retirement status. *Id.* at 7. Appointment was then made to fill the trial board vacancy. *Id.* At the regular February, 1986 executive board meeting, Ephraim Mayle memorialized his resignation by signing the December 19, 1985 letter from the International Union under the notation, "I comply with this letter." Exhibit C; Affidavit of Mike Mayle at ¶ 8. The executive board accepted his resignation and appointed William Mayle to fill the vacancy it created. *Id.*

Even though this evidence indicates that Ephraim Mayle voluntarily resigned, he submits by affidavit that he was "removed" from the board because he was a supporter of plaintiff. Affidavit of Ephraim Mayle at ¶ 9, 10. He feels that the board knew he was in semi-retirement before the election, a status preventing the holding of office by the constitution, and that his status only raised concern after he questioned the charges against plaintiff.

**694**

*Id.* at ¶ 4–7; *see,* also, Response Brief of Plaintiff, Exhibit A.

Minutes were taken at the trial board hearing. Plaintiff's Motion for Summary Judgment, Exhibit B. The evidence presented by Charles Croston is listed as plaintiff's business card and the letter he sent to contractors as business manager of Local 521. *Id.* Plaintiff contends that the trial board considered additional evidence that he was not given an opportunity to rebut, namely, two newspaper articles which appeared in the Akron Beacon Journal and the Canton Repository. *See* Plaintiff's Motion for Summary Judgment, Exhibits H, I. Plaintiff knew of the articles before the hearing. Plaintiff's Deposition at 53. In fact, the trial board members had read the newspaper articles prior to the hearing, and they were discussed at the hearing. *See* Plaintiff's Motion for Summary Judgment, Exhibit E, the Local's Answers to Interrogatories; Deposition of Roger Lee Croston at 29; Deposition of Charles Croston at 23; Deposition of William Mayle at 20; Deposition of Kenny Newman at 23-24. Although the trial board members were thus aware of the formation of Local 521 and plaintiff's association with it before the hearing, they based their consideration of the charges on the evidence presented at the hearing. *Compare* Depositions of Charles Croston, William Mayle, Kenny Newman, Jon Elkins, Roger Croston, *with* Affidavits of Charles Croston, Jacob Croston, John Elkins, Kenny Newman, Mike Mayle, Roger L. Croston, William Mayle, and Mark R. Carothers attached to the Local's Motion for Summary Judgment.

The handwritten minutes indicate that plaintiff presented his written answers to the charges and then refused to answer questions. He did answer some questions posed by each board member, however. He indicated that he was the business manager for Local 521 and did contact contractors in that capacity but that he was unaware of using Local 1015 laborers and felt that Local 521 was not competing with the Local. Plaintiff's Motion for Summary Judgment, Exhibit B. After the hearing, the trial board met and unanimously voted

that plaintiff was guilty on all charges. *Id.* at 13.

Plaintiff appealed this decision by the submission of a letter dated February 16, 1986 to the International Union. International Union's Motion for Summary Judgment, Exhibit 16. Plaintiff included a copy of the charges against him and his typed responses. He also made reference to the fact that he had filed a grievance which was still before the International protesting the action taken by the Local in disqualifying him from running for office during the October, 1985 election. On that basis, he stated that he advised the trial board that he felt his hearing on the charges was not fair and impartial. In support of this allegation plaintiff submitted a one page statement itemizing reasons why each trial board member should have been disqualified. The reasons follow:

Jon Elkins—He has the job that I am trying to turn the election over for. His position as Recording Secretary was the job I had been nominated for and at that time no one was running against me. When they said I was disqualified they nominated him for my position.

Jacob Croston—In the election I campaigned for the opposite party than this man ran for.

Kenny Newman—His boss, the Business Manager, Charles Croston is the one who brought the charges against me. He sat in the same room with the Trial Board and if he voted against Charles he could have lost his job.

Roger Lee Croston—Before I even received the charges that they brought against me Roger made several statements that they were going to do this and kick me out of the Union. William Mayle III will sign a statement saying he called him on several occasions and made these remarks and also said anyone who went along with me would also be kicked out. He also was campaigning for the other party during the election.

Mark Carothers—Mark called me about two weeks before my trial and told me he didn't like what I was doing. Also, during the election when I was campaigning

for Sammy Kennedy he called and said he had minutes he had kept from when he was Recording Secretary that he could use against Sammy.

William Mayle—William is a relative of mine and statements were made through our families which show his prejudice. Michael Mayle—He ran in the election against my cousin Denny Mayle and Denny has brought charges against the election to take his office and I feel he was partial to the case.

*Id.*

Plaintiff had been disqualified from running for office in October, 1985 because he had not been a member in good standing for two years as required by Article V, section 1 of the constitution. *Id.* at Exhibit 26, 29. Plaintiff does not contest the fact that his dues were in arrears at times during the two years prior to the election. *See, id.* at Exhibits 12–15; Affidavit of Ann Welborn, Exhibit 3. His complaint centered instead on the constitutional waiver of this requirement for Locals which have been chartered for less than two years. International Union's Motion for Summary Judgment, Exhibit 26. As the Local had merged with another to form new Local 1015, plaintiff felt the two year requirement did not apply. Plaintiff appealed his disqualification, it was set for hearing, and subsequently found that, first, plaintiff's protest was late and, second, that his interpretation of the constitutional provision was in error. *Id.* at Exhibits 31–32. On the record before them, the appeals panel also found that the election process had been fair. *Id.* at Exhibit 32.

The International Union invited both plaintiff and the Local to submit anything they wished relating to his appeal of his expulsion. *Id.* at Exhibits 17, 18. The Local sent pertinent documents, *id.* at Exhibit 20, and the matter was set for hearing on July 7 or 8, 1986 in Illinois. *Id.* at Exhibits 21, 22. The matter was called on July 8, 1986 but neither party appeared. *Id.* at Exhibit 23. Based upon the documents submitted by the parties, the International Union found that plaintiff had assisted in the formation of a separate local

union, had not adequately advised employees or employers that it was an independent union, that it was an attempt to organize employers signatory to agreements with the Local and that there was no evidence presented to rebut the truth of these findings. *Id.* at Exhibit 24. The panel thus recommended that the appeal be denied which recommendation was adopted by the general executive board on July 22, 1986. *Id.* at Exhibit 25.

Plaintiff's motion for summary judgment is based on three premises: that there is no material issue of fact that he did not receive a full and fair hearing from the trial board, that his activities were forms of free speech protected by 29 U.S.C. § 411(a)(2) and that he did not receive a full and fair hearing at the appeals level. Both defendants base their motions for summary judgment on the position that there is no material issue of fact that the evidentiary burden to support union discipline has been met in this case and that the procedural safeguards required by 29 U.S.C. § 411(a)(5) were met. The court finds that the defendants' motions are well taken and grant summary judgment in their favor for the following reasons.

Section 411(a)(5) requires that plaintiff be given a full and fair hearing on disciplinary charges. Courts are not, however, authorized to determine the scope of offenses for which a union may discipline its members. *Boilermakers v. Hardeman*, 401 U.S. 233, 244–45, 91 S.Ct. 609, 616, 28 L.Ed.2d 10 (1971). A member must be served with written and specific charges in order to defend against them and thereafter be given a full and fair hearing. *Id.* at 245–46, 91 S.Ct. at 617. The charging party must provide "some evidence" at the disciplinary hearing to support the charges made. *Id.* at 246, 91 S.Ct. at 617. That is the standard to be applied in reviewing the disciplinary proceedings brought against plaintiff. *Id.*

Reduced to its basic undisputed facts, plaintiff was notified in writing of disciplinary charges brought against him, was provided a hearing where he was invited to, but did not, present witnesses and evidence

and where specific evidence was presented to support the charges. In fact, plaintiff does not dispute that he was involved with the new Local 521 and that he did contact potential members and contractors as business manager of that organization. The evidence presented included a letter sent to contractors over his signature and his business card. The Local found that he was thus involved in dual unionism and subject to expulsion under the organization's constitutional provisions at Article III, section 3(a), (b), (c), (d) and (g). Thereafter, both plaintiff and the Local were invited to submit any documents relevant to the appeal. Copies of two newspaper articles written about Local 521 were submitted by the Local as well as the evidence submitted at trial and the minutes of that proceeding. Plaintiff submitted only his statement as to the bias of the board as additional evidence. Based upon the record, plaintiff's appeal was denied.

■ The activity for which plaintiff was charged was considered at both levels to be in conflict with the union's constitution. The specific provisions can be interpreted to preclude dual unionism in the form of an organization designed to compete with the Local in obtaining agreements with contractors. This activity is, in this court's view, within the scope of union discipline justified by a reasonable interpretation of its constitution. *See Vestal v. Hoffa*, 451 F.2d 706, 708 (6th Cir.1971), *cert. denied*, 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972) (Courts should defer to union's interpretation of the constitution unless it is not fair and reasonable.). Further, some evidence of those charges was presented in the form of plaintiff's business card, the letter he sent to contractors as business manager for that organization and plaintiff's own responses to questions at the hearing. Thus, unless he did not receive a full and fair hearing, the expulsion must stand.

■ Before discussion of that issue, however, consideration will be given to plaintiff's allegation that his right of free speech and assembly protected by 29 U.S.

C. § 411(a)(2) was violated. That section provides:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

It is unclear whether plaintiff is claiming that his expulsion was in retaliation for the position he took in support of certain candidates during the election thus violating his right of free speech or whether it was for his speech in connection with Local 521. If it is the former, his assertion is completely unsupported by the evidence. If it is the latter, this court interprets § 411(a)(2) to ensure that members are not penalized for speech or opinions related to union affairs. However, speech made in contravention of a union's well-being or ability to contract is not protected by this section in that the union may enforce reasonable rules to prevent interference with its contracts. *See Davis v. Ampthill Rayon Workers, Inc.*, 446 F.Supp. 681, 686–87 (E.D.Va.1978), *aff'd*, 594 F.2d 856 (4th Cir.1979); *Sawyers v. Grand Lodge, International Association of Machinists*, 279 F.Supp. 747, 755–56 (E.D.Mo.1967). *But, see, Airline Maintenance Lodge 702 v. Loudermilk*, 444 F.2d 719 (5th Cir.1971) (The court endorsed a balancing approach between the interests of members and the union in determining a question of free speech protected by this section.). Therefore, the activity at issue in this case was not the type protected by section 411(a)(2).

Thus, the focus is on whether plaintiff was afforded a full and fair hearing as required by 29 U.S.C. § 411(a)(5)(C). Plaintiff bases his assertion mainly on the claimed impartiality of the trial board. An unbiased fact finder in union disciplinary matters is fundamental to the due process requirement imposed by this section. *Myers v. Affiliated Property Craftsman, Local No. 44,* 667 F.2d 817, 820 (9th Cir. 1982). However, fact finders are generally members of the same local organization, and it is generally accepted that they may have some knowledge of the facts from sources outside the hearing. *Id.* They may not, of course, prejudge the guilt of the accused. *Stein v. Mutual Clerks Guild of Massachusetts, Inc.,* 560 F.2d 486, 491 (1st Cir.1977); *Falcone v. Dantinne,* 420 F.2d 1157, 1161–63 (3d Cir.1969); *Perry v. International Longshoremen's Ass'n,* 638 F.Supp. 1441, 1449 (S.D.N.Y.1986). An essential element of a full and fair hearing is an impartial body reaching its decision on the basis of evidence which the accused has an opportunity to address. *Frye v. United Steelworkers of America,* 767 F.2d 1216, 1223 (7th Cir.1985).

With these guidelines in mind, the court finds that plaintiff was offered a full and fair hearing. He was given written notice of the charges and evidence was presented which he could, but did not, address. While he feels that the trial board members prejudged him, he has not presented any evidence to support that charge. It is true that he was disqualified from running for office in October, 1985, but that action was based upon his failure to meet the constitutional standards, an action which has been upheld on appeal to the International Union. The trial board members have all submitted affidavits saying that they did not prejudge plaintiff's guilt. While they admitted knowing some of the facts underlying the charges and reading the newspaper accounts, that is hardly surprising and not, in itself, the equivalent of prejudgment. Plaintiff's depositional testimony shows that he decided that the hearing was a "kangaroo court," he decided not to respond to questions and he decided not to present witnesses. He thus cannot complain about the decision to expel him which was based on the evidence which was presented.

Another facet of plaintiff's bias allegation is the removal of Ephraim Mayle from the executive and trial boards. The evidence clearly indicates that Ephraim Mayle stepped down voluntarily based on a position letter received from the International Union on his retirement status in relation to holding office. He was thus not "removed." This action was triggered by his receipt of pension benefits. Nor does the record disclose any evidence that the trial board was biased because of plaintiff's earlier support of Sam Kennedy.

Lastly, plaintiff complains that the trial board based their decision on newspaper articles which were not submitted as evidence. He was aware that these articles had been published, however, in widely circulated newspapers. It is naive to think that the trial board would not have read them as plaintiff admittedly had. He could have presented evidence at his hearing to negate any errors he felt had been published. Nevertheless, the evidence presented, his business card and letter, supports the finding of the trial board.

Plaintiff also contends that the appeals process was unfair because consideration was given to the newspaper articles. Actually, both parties were invited to submit any additional documents relevant to the matter and attend the hearing. Plaintiff did not supplement or even support his allegations. The Local sent in their file including the articles. Based on the record, the Local's decision was affirmed. There is no basis for concluding that the proceeding was unfair.

Accordingly, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted. This cause is thus dismissed.

IT IS SO ORDERED.

## ORDER

In accordance with this court's Order filed December 30, 1987;

IT IS ORDERED that this action is hereby dismissed, with prejudice, pursuant to Federal Rule of Civil Procedure 58.

IT IS SO ORDERED.