TEXTO COMPLETO DE LA RESOLUCIÓN
Comparece ante nos Julio E. Geraldino Muñiz, en adelante, el peticionario, solicitando la revisión de una Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante dicho dictamen, el tribunal a quo denegó una solicitud de sentencia sumaria presentada por el peticionario.
Por las razones que se esbozan a continuación, se deniega la expedición del auto solicitado.
I
Conforme surge del recurso ante nuestra consideración, el 2 de noviembre de 2000, el peticionario instó demanda sobre impugnación de testamento contra la Sucesión de don Julio Enrique Geraldino Pagán compuesta por los hermanos Rosamelia, Julio Enrique y Carmen Lucila Geraldino Muñiz, así como contra la viuda del causante, doña Lucila Muñiz Báez, en adelante, los recurridos. En síntesis, el peticionario alegó que en el año 1990, doña Lucila Muñiz instó un procedimiento judicial para declarar incapaz al causante. Adujo que, durante la vigencia del procedimiento, el causante otorgó Testamento Abierto ante el notario Pedro J. Rodríguez Santiago, el 14 de febrero de 1991. Mediante dicho acto desheredó al peticionario. Posteriormente, el tribunal declaró incapaz al causante, estado que prevaleció hasta la fecha de su muerte, el 12 de abril de 2000. El peticionario alegó que el Testamento era nulo, toda vez que, al momento de testar, el causante ya estaba incapacitado mentalmente y bajo la custodia del recurrido Julio Enrique Geraldino. Asimismo, alegó que el notario autorizante conocía de la incapacidad del causante, por lo que debió cumplir con las formalidades requeridas legalmente.
El 22 de noviembre de 2000, las recurridas Rosamelia Geraldino y la viuda del causante contestaron la demanda aceptando, en general, las alegaciones de la demanda. Las recurridas aclararon que, al momento de testar, el causante aún no había sido declarado incapaz. Por su parte, el 1 de diciembre de 2000, el recurrido Julio Enrique Geraldino presentó alegación responsiva en la que planteó, afirmativamente, que al momento de testar, el causante estaba en pleno uso de sus facultades mentales, según surge de la fe dada por el notario y los tres testigos *441 instrumentales.
Así las cosas, el 10 de octubre de 2003, el peticionario instó escrito intitulado “Moción Solicitando se Dicte Sentencia Sumaria”. El peticionario alegó que la Sentencia que declaró incapaz al causante constituia cosa juzgada, por lo cual no existía controversia en cuanto a la incapacidad del causante a la fecha del otorgamiento del Testamento.
Oportunamente, el recurrido Julio Enrique Geraldino se opuso a la petición arguyendo que la declaración de incapacidad se hizo por estipulación de los familiares, razón por la cual no medió testimonio pericial a tales efectos. Por consiguiente, el recurrido sostuvo que dicha determinación no se retrotrajo a la fecha del otorgamiento del Testamento. Asimismo, el recurrido alegó que el peticionario fue desheredado porque éste agredió físicamente al causante.
Luego de interpuestas varias réplicas, el 28 de octubre de 2004, el Tribunal de Primera Instancia dictó Resolución, notificada el 10 de noviembre de 2004, en la que denegó la solicitud de sentencia sumaria.
Inconforme ante tal dictamen, el peticionario acude ante nos. Sin ulterior trámite, procedemos a resolver.
II
En su escrito, el peticionario plantea que incidió el Tribunal de Primera Instancia al resolver que existen controversias de hecho que impiden la disposición sumaria del caso; al determinar que al causante le cobijaba la presunción de capacidad a pesar de que se había iniciado un pleito de incapacidad y el notario que autorizó el Testamento en el 1991 fue el abogado del causante en el 1990 en el pleito de incapacidad, el cual concluyó con la declaración de incapacidad del causante; y en su aplicación del caso Jiménez Montalvo v. Jiménez Font, 76 D.P.R. 718 (1954), cuando la situación fáctica del mismo es distinta al caso de autos.
III
Es norma reiterada que mediante la moción de sentencia sumaria, regulada por la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36 et. seq., un tribunal puede disponer de un caso sin celebrar vista en su fondo en aquellas situaciones en que la parte que la solicita demuestra que no existe controversia en cuanto a los hechos esenciales alegados en la demanda y que tan sólo resta disponer de las controversias de derecho existentes. PFZ Properties, Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 911 (1994); Medina v. M. S. & D. Química, P.R., Inc., 135 D.P.R. 716, 726-727 (1994); Caquías v. Asoc. Res. Mansiones Río Piedras, 134 D.P.R. 181, 216 (1993).
El propósito de la sentencia sumaria es aligerar la tramitación de los casos en forma justa, rápida y económica, permitiendo que se dicte sentencia cuando de los documentos surge que no existe disputa sobre un hecho esencial y sólo resta aplicar el derecho, por lo que resulta innecesario celebrar un juicio en su fondo. Rosario v. Nationwide Mutual, res. el 4 de marzo de 2003, 2003 J.T.S. 34; González v. Alicea, Dir. Soc. Asit. Legal, 132 D.P.R. 638, 646-647 (1993); Mercado Vega v. U.P.R., 128 D.P.R. 273, 281 (1991); Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20, 25-26 (1986); Padín v. Rossi, 100 D.P.R. 259, 263 (1971).
En este contexto, el tribunal debe analizar si existen o no controversias en cuanto a los hechos y que en derecho procede emitir sentencia a favor de la parte que la solicita. No cabe duda que un tribunal debe dictar sentencia sumaria a favor de la parte promovente si de los autos y de los documentos presentados en apoyo y oposición de dicha moción surge que no existe controversia alguna en cuanto a los hechos esenciales y que, como cuestión de derecho, procede que se dicte la misma a favor de la aludida parte.
Sin embargo, como dicha determinación requiere la adjudicación de un litigio sin que las partes tengan la oportunidad de presentar su caso ante el tribunal, la jurisprudencia ha concebido la sentencia sumaria como un *442 remedio extraordinario que sólo debe concederse cuando el promovente ha establecido su derecho con claridad. Benitez et als. v. J. & J., res. el 30 de septiembre de 2002, 2002 J.T.S. 137; García Díaz v. Darex P.R., 148 D.P.R. 364, 382 (1999). Además, se puede conceder cuando el promovente ha tenido una oportunidad adecuada de demostrar que el oponente no tiene derecho a que se dicte sentencia en su favor como cuestión de derecho. M.J.C. A., menor v. J.L.E.M., menor, 124 D.P.R. 910, 930 (1989); Flores v. Municipio de Caguas, 114 D.P.R. 521, 525 (1983); Sucn. Meléndez v. DACO, 112 D.P.R. 86, 89 (1982).
De otro lado, le corresponde a la paite promovida rebatir dicha moción por vía de declaraciones juradas u otra documentación que apoye su posición, pues si bien el no hacerlo necesariamente no significa que ha de emitirse el dictamen sumario automáticamente en su contra, tal omisión lo pone en riesgo de que ello ocurra. Corp. Presiding Bishop CJC of LDS v. Purcell, 117 DPR 714, 720-721 (1987); Flores v. Municipio de Caguas, supra, a la pág. 525. Esto significa que toda duda sobre si un hecho fue controvertido debe resolverse a favor de la parte que se opone a la moción porque en esta etapa del procedimiento el juez no debe considerar la credibilidad de los documentos.
La Regla 36.3 de las de Procedimiento Civil, supra, impone al juez que atiende una solicitud de sentencia sumaria la obligación de considerar no sólo las declaraciones juradas sometidas para sustentarlas o las contra declaraciones juradas de la paite contraria, sino también “las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas”, amén de “todo documento admisible en evidencia” que obre en autos. Mgnt. Adm. Servs. Corp. v. E.L.A., 152 D.P.R. 599, 610-611 (2000); Flores v. Municipio de Caguas, supra, a la pág. 525; Padín v. Rossi, supra, a la pág. 263.
A tenor con esta obligación, el juzgador deberá analizar concienzudamente la moción de sentencia sumaria y su oposición, con sus respectivos anejos y el expediente en su totalidad, con el propósito de determinar si queda algún hecho material en controversia o si existen alegaciones afirmativas en la demanda radicada que no han sido refutadas. En cualquiera de dichos casos, de ello ser así, el tribunal deberá denegar la solicitud de sentencia sumaria. Corp. of Presiding Bishop CJC of LDS v. Purcell, supra, a las págs. 720-721. Una vez el tribunal tiene ante sí todos los documentos, debe analizar los hechos en la forma más favorable a la parte que se opone a que se dicte sentencia sumaria. Méndez Arocho v. El Vocero de P.R., 130 D.P.R. 867, 873-874 (1992). La existencia de duda por parte del tribunal sobre la existencia o no de una controversia de hechos en el caso bajo su consideración, derrota la moción de sentencia sumaria. Corp. Presiding Bishop CJC of LDS v. Purcell, supra, a las págs. 720-721.
Así, “sólo procede dictar sentencia sumaria cuando surge claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos y que el tribunal cuent[a] con la verdad de todos los hechos necesarios para poder resolver la controversia (Cita de caso omitida). Cuando no existe una clara certeza sobre todos los hechos de la controversia, no procede una sentencia sumaria”. Mgnt. Adm. Servs. Corp. v. E.L.A., supra, ala pág. 610.
Por último, el Tribunal Supremo ha enfatizado que en los casos en que existe controversia sobre aspectos subjetivos centrales, tales como establecer la intención de las partes sobre la interpretación de contratos y derivar credibilidad, no es aconsejable dictar sentencia sumaria. En estos casos, falta la claridad fáctica necesaria para despojar a un litigante de su día en corte para probar sus alegaciones. Rosario Ortiz v. Nationwide Insurance Co., supra. Igualmente, no es aconsejable dictar sentencia sumaria cuando existen alegaciones de conducta dolosa empleada por una parte contra la otra. Id. Tampoco debe ser utilizada en casos complejos, en casos cuya adjudicación requiera un análisis detenido y cuidadoso de los hechos o que envuelven cuestiones de interés público. Rosario v. Nationwide Mutual, supra; Jusino et als. v. Walgreens, res. el 1 de noviembre de 2001, 2001 J.T.S. 154; Ríos v. Cidra Mfg. Oper. of P.R., Inc., 145 D.P.R. 746, 751 (1998); Rivera v. Dpto. de Hacienda, 149 D.P.R. 141, 152 (1999) a la pág. 152; PFZ Properties, Inc. v. Gen. Acc. Ins. Co., supra, a la pág. 914; Corp. Presiding Bishop CJC of LDS v. Purcell, supra, a las págs. 722-723.
*443 IV
Dentro del marco jurídico antes enunciado, procedamos a resolver las controversias planteadas por el peticionario.
De acuerdo a los documentos acompañados en la solicitud de sentencia sumaria, el peticionario sostiene que los siguientes hechos no están en controversia:

“1. El 12 de octubre de 1989, el Dr. James N. Kvale del “St. Elizabeth Hospital Medical Center” de Ohio, suscribió una carta dirigida al Dr. Santiago Vivaldi en la que, tras evaluar al causante, expuso lo siguiente:

(...) Once again, my impression is that Mr. Geraldino is dementing. The most probable cause of the dementia (ininteligible) Alzheimer’s Disease, there is no history which would support the contention that he is either multiple brain infarct or other progressive neurologic (sic) disease.

The major dilemma is Mr. Geraldino’s management. At this point in time, he is making poor business judgments and his behavior is potentially dangerous to himself and to others. With this in mind, I have encouraged the family to consider initiating the establishment of guardianship and the declaration of Mr. Geraldino’s incompetence.

(...)

The examination in prompted by reason of the fact that his family is concerned with changing cognitive function, most especially recent and immediate recall. Consistent with this, the patient is becoming increasingly paranoid. There is also a change in behavior, in which he is becoming increasingly aggressive.

(...)

The sons report that in the past 2-3 years, the patient has undergone a rapid and progressive deterioration of cognitive function. Further, that that affects all aspects of his life. The patient is getting into increasing difficulty making poor judgments and misjudgments in the management of his business. It is important to note that both the patient’s wife and her family members are dependent upon the family business for their livelihood and well-being. The patient’s behavior in this behalf is threatening the economic and personal well-being of the entire family.

Véase, págs. 15, 17-18 del Apéndice.

2. El 20 de noviembre de 1990, la viuda del causante entabló una petición de declaración de incapacidad y nombramiento de tutor. Id., a las págs. 30-32. Ante ello, el tribunal señaló vista para el 21 de diciembre de 1990.

3. El 17 de diciembre de 1990, el causante compareció al pleito representado por el licenciado Pedro J. Rodríguez Santiago. Id., a la pág. 36. Mediante escrito titulado “Contestación Urgente a Petición”, el causante alegó que no había sido consultado sobre el referido procedimiento y que procedía la desestimación del mismo por no basarse en prueba médica.

4. El 14 de febrero de 1991, el causante otorgó Testamento Abierto mediante Escritura Núm. dos otorgada en Yauco, Puerto Rico, ante el notario Pedro J. Rodríguez Santiago. Id., a las págs. 23-29. A la misma comparecieron tres testigos instrumentales.

5. En la cláusula primera del Testamento, el causante desheredó al peticionario “totalmente por el todo de la herencia, de manera absoluta, terminante y definitiva, por razón de éste haberme maltratado de obra; esto es, me ha pegado físicamente y haberme sacado a empujones de mi negocio”. Id., a la pág. 24.

*444
6. El 4 de mayo de 1992, el peticionario y los recurridos presentaron una “Moción Informando Estipulaciones Id., a las págs. 39-42. De acuerdo a la misma, las partes solicitaron al tribunal que adjudicara la petición sobre incapacidad mediante el testimonio brindado por el Dr. Alberto Rodríguez Robles, los expedientes médicos del causante obtenidos del consultorio de dicho galeno, así como del consultorio del Dr. Roberto A. Capestini y en el Centro Médico Psiquiátrico del Caribe. Asimismo, las partes estipularon el testimonio del Dr. Capestini, quien fungía como psiquiatra a cargo del tratamiento del causante, el cual declararía conforme a su expediente médico.

De igual forma, las partes se allanaron a la solicitud de incapacidad y a que la viuda fuera la tutora del causante.

7. El 21 de agosto de 1992, el Tribunal de Primera Instancia dictó Resolución mediante la cual declaró al causante incapacitado por razón a su condición física y de salud para regir su persona y bienes.” Id., a la pág. 49.
Al amparo de estos hechos, el peticionario planteó que, como cuestión de derecho, procedía dictar sentencia sumaria decretando la nulidad del Testamento, ya que al momento de testar, el causante estaba incapacitado. A tales fines, el peticionario apunta al hecho de que la petición sobre incapacidad se presentó en noviembre de 1990 y, tres meses después, el causante otorgó el Testamento impugnado, fecha en que su capacidad era cuestionada por las partes. Además, el peticionario aduce que la Resolución mediante la cual se declaró la incapacidad del causante constituye cosa juzgada en su modalidad de impedimento colateral por sentencia. Finalmente, el peticionario esgrimió que el notario autorizante conocía la cuestionabilidad de la incapacidad, ya que fue quien lo representó legalmente en dicho pleito.
De entrada, debemos señalar que en su oposición, el recurrido Julio Enrique Geraldino no controvirtió de forma alguna los hechos antes reseñados. Más bien se limitó a sostener la validez de la causal de desheredación, cuestión que resulta impertinente a la controversia planteada en la solicitud de sentencia sumaria. Escuetamente, el recurrido indicó que a la vista sobre determinación de incapacidad no compareció el Dr. Capestani, por lo que “existe controversia sobre los hechos esenciales sobre la competencia del difunto don Julio E. Geraldino Pagán, por lo cual es meritoria con (sic) la aportación de prueba testifical y documental, no constituyendo la sentencia cosa juzgada.” Id., a la pág. 51.
Tal argumento resulta inmeritorio, ya que, de acuerdo a la estipulación allegada entre las partes en el caso de declaración de incapacidad, las partes sometieron a la adjudicación del tribunal el testimonio del Dr. Capestani quien, según las partes, testificaría conforme a su expediente médico.
No obstante, en una posterior réplica, el recurrido alegó que las estipulaciones no se hicieron con carácter retroactivo. Id., a la pág. 60. Ciertamente, dicha aseveración se sustenta únicamente en la declaración jurada suscrita por el recurrido. Por lo tanto, mediando la adjudicación de credibilidad, el tribunal a quo actuó correctamente al no disponer sumariamente del caso de marras. Se impone la celebración de una vista en la que las partes puedan presentar la correspondiente prueba para sustentar sus alegaciones.
De otra parte, aunque el recurrido no controvirtió los hechos reseñados por el peticionario, el tribunal a quo entendió que coincidían elementos subjetivos los cuales son necesarios para establecer hechos específicos y los cuales sólo pueden demostrarse en un juicio. Tales hechos se refieren a si el causante tenía lucidez o capacidad mental al momento de testar.
Como norma general, en nuestro sistema de derecho existe una presunción de sanidad o capacidad mental. Rivera y otros v. Banco Popular, 152 D.P.R. 140, 157 (2000); Jiménez v. Jiménez, supra. En materia de la capacidad mental necesaria para otorgar un testamento, el Código Civil incluye varias disposiciones en los Arts. *445 612 a 615, 31 L.P.R.A. secs. 2112-2115. En general, se reconoce: que existe una presunción de sanidad mental y que, de todos modos, lo importante es la sanidad mental del testador al momento de testar, sin admitirse prueba de incapacidad mental antes o después del testamento. Quien impugne la capacidad del testador por condición mental tiene el peso de probarlo con evidencia evidente y completa. Jiménez v. Jiménez, supra. De hecho, según dispone el Art. 613 del Código Civil, el testamento hecho antes de la enajenación mental es válido. 31 L.P.R.A. see. 2113.
La presunción de sanidad mental que generalmente prevalece en cuanto a las personas en general, es aplicable a la capacidad de un testador. Dicha capacidad mental, pues, se presume mientras no se destruya por una prueba concluyente en contrario. Jiménez v. Jiménez, supra. El que impugna la validez de un testamento por incapacidad mental del testador tiene el peso de la prueba. Tal peso no se sostiene a través de prueba de incapacidad en una época anterior o posterior al acto testamentario, o por incapacidad temporal, intermitente u ocasional, y sí a través de prueba de incapacidad mental de carácter habitual, continuo o crónico. Id.
Es preciso notar que incluso aquél que ha sido declarado demente mediante determinación judicial, puede testar. Jiménez v. Jiménez, supra. En efecto, el Art. 614 del Código Civil dispone:

‘‘Siempre que el demente pretenda hacer testamento en un intervalo lúcido, designará el notario dos facultativos que previamente le reconozcan, y no lo otorgará sino cuando éstos respondan de su capacidad, debiendo dar fe de su dictamen en el testamento, que subscribirán los facultativos además de los testigos. ”

31 L.P.R.A. see. 2114.
Es decir, incluso una persona declarada demente judicialmente puede testar, siempre que se encuentre en un intervalo lúcido y que se tomen las medidas para evidenciar, por los profesionales capacitados, la sanidad mental al momento de otorgar el testamento. Ha dicho el Tribunal Supremo que la norma a seguir, en casos civiles, es determinar si el contratante, enfermo mental, tiene la capacidad mental suficiente para darse cuenta del acto que realiza. Rivera v. Sucn. Díaz Luzunaris, 70 D.P.R. 181 (1949).
Según hemos apuntado, el peticionario acompañó a su solicitud de sentencia sumaria varios documentos con el propósito de argumentar que el causante estaba incapacitado al momento de testar. Sin embargo, de un cuidadoso examen de dicho documentos, y sin adjudicar los méritos de los mismos, revela que la capacidad del causante era cuestionable antes de testar, como lo sugiere la carta suscrita por el Dr. Kvale. De igual forma, la posterior declaración de incapacidad a la que el peticionario y los recurridos se allanaron, refleja la incapacidad del causante luego del otorgamiento del Testamento. Es decir, el peticionario se limitó a presentar prueba anterior, posterior o temporal de la condición mental del causante. No obstante, la realidad fáctica es que de los documentos en cuestión no puede concluirse de forma alguna cuál era la condición mental del causante al momento de testar, esto es, el 14 de febrero de 1991. Tal prueba es la requerida por nuestro ordenamiento para determinar si el Testamento es nulo por ausencia de capacidad. Dicha prueba no surge de la moción de sentencia sumaria.
Según hemos esbozado, la jurisprudencia es meridianamente clara respecto a la presunción de capacidad que ampara a toda persona al momento de testar. En el caso de autos, el peticionario tiene la obligación de presentar prueba concluyente que demuestre que el causante no tenía la capacidad mental suficiente para darse cuenta del acto que realizaba al otorgar el Testamento a fin de derrotar dicha presunción. El hecho de que el causante alegadamente padeciera de una condición de salud que perjudicara su sanidad mental, no necesariamente significa que el causante estaba impedido de otorgar el Testamento. De igual forma, el hecho de que el causante haya sido declarado incapaz judicialmente, no constituye razón para invalidar el Testamento. Aun siendo declarado incapaz, el causante tenía plena libertad para testar siguiendo lo dispuesto por el Código Civil.
*446 Si el peticionario derrota, mediante prueba concluyente, que el causante no tenía capacidad para testar al momento del otorgamiento, entonces el foro sentenciador estará en posición para determinar si el notario debió cumplir con lo dispuesto por el Art. 614 del Código Civil, supra.
En vista de lo anterior, resulta forzoso concluir que existe controversia de hecho en cuanto a la capacidad del causante al momento de otorgar el Testamento. Por lo tanto, actuó correctamente el tribunal a quo al determinar que existe una presunción de capacidad, y por ello, denegar la solicitud de sentencia sumaria bajo tal fundamento. Asimismo, debemos coincidir con la apreciación que hiciera el tribunal a quo del caso Jiménez v. Jiménez, supra.
Por otra parte, el peticionario aduce que la resolución declarando la incapacidad del causante constituye cosa juzgada en el pleito de marras por su modalidad de impedimento colateral por sentencia.
En nuestro ordenamiento existen consideraciones de orden público y de necesidad procesal que impiden relitigar lo litigado en una causa anterior. Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 221 (1992); Zambrana v. Tribunal Superior, 100 D.P.R. 179, 181 (1971). Tanto la doctrina de la cosa juzgada o res judicata, como su modalidad de impedimento colateral por sentencia, están fundadas en el interés del Estado de que se le ponga fin a los litigios, y en la deseabilidad de que no se someta a un ciudadano a las molestias que supone litigar la misma causa en más de una ocasión. A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 762 (1981).
El ámbito de aplicación de la figura, según se conoce, está expresamente delineado por el Alt. 1204 del Código Civil, 31 L.P.R.A. see. 3343. Conforme a dicho precepto, la aplicación de la figura requiere la concurrencia de “(l)a más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron”. Véase además, Fatach v. Triple S, Inc., 147 D.P.R. 882, 1889 (1999); Aponte v. Román, 145 D.P.R. 477, 490 (1998); Rodríguez Rodríguez v. Colberg Comas, supra.
El requisito de identidad de paites y la calidad en que lo fueron exige que los litigantes en el segundo pleito sean “causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen dereclw a exigirlas u obligación de satisfacerlas”. Fatach v. Triple S, Inc., supra; Art. 1204, supra. Este requisito sigue la regla de la mutualidad que prohíbe la alegación de cosa juzgada contra una parte a menos que ésta fuere parte original o se hallare en relación mutua con otra. Rodríguez Rodríguez v. Colberg Comas, supra.
Por identidad de causa, se entiende el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas. Mercado Riera v. Mercado Riera, 100 D.P.R. 940, 951-952 (1972), citando como autoridad a Manresa, Comentarios al Código Civil Español, Tomo VIII, Vol. II, 5ta Edición, (1950). Existe identidad de causas “cuando la nueva acción estuviera como embebida en la primera, o fuese consecuencia inseparable de la misma”. Acevedo v. Western Digital Caribe, Inc., 140 D.P.R. 452, 464 (1996); A & P Gen. Contractors v. Asoc. Caná, supra; Mercado Riera v. Mercado Riera, supra.
Sobre el concepto de identidad de causa, el Tribunal Supremo de Puerto Rico recogió la trayectoria jurisprudencial en la decisión emitida en el caso de Mercado Riera v. Mercado Riera, supra, y concluyó que el factor determinante de la identidad de causa era si las dos acciones “constituyen o no una misma causa de acción”, no en el sentido de que el título de la reclamación sea el mismo, sino en el sentido de que el motivo de la demanda tenga el mismo origen. íd., pág. 951. Citando al tratadista Mames a, esbozó el Tribunal Supremo:
“Para los efectos de la cosa juzgada, la palabra causa tiene un sentido que no es de razón o motivo de un contrato o acto jurídico. Significa el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas, y no debe confundirse con los medios de prueba ni con los fundamentos legales de las pretensiones deducidas por las partes. ” (Citas omitidas e itálicas en el original).
*447 El criterio de identidad de cosas, por su parte, atiende básicamente el objeto o material sobre el cual se ejercita la causa de acción. Lausell Marxuach v. Díaz de Yáñez, 103 D.P.R. 533, 535 (1975). En general, basta que se refiera al mismo asunto, aunque en el uno se abordase totalmente y sólo parcialmente en el otro, y aunque las cosas hayan sufrido disminución o alteración, desde el primero al segundo, que afecte su valor o alguna otra de sus condiciones. Rodríguez Rodríguez v. Colberg Comas, supra, a la pág. 220, citando como autoridad a Scaevola, Código Civil, 2da ed., T. 29, pág. 535 (1958).
En cuanto al ámbito operativo de la doctrina, se apunta que la sentencia dictada en un pleito anterior impide que se litiguen, en un pleito posterior, entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas, y aquéllas que pudieron haber sido litigadas y adjudicadas con propiedad, en la acción anterior. Pagán Hernández v. U.P.R., 107 D.P.R. 720, 732-733 (1978); Mercado Riera v. Mercado Riera, supra; Isaac Sánchez v. Universal C.I.T. Credit, 95 D.P.R. 372, 382 (1967); Capó Sánchez v. Srio. de Hacienda, 92 D.P.R. 837, 839 (1965); Riera v. Pizá, 85 D.P.R. 268, 274 (1962).
A su vez, el Tribunal Supremo de Puerto Rico también ha reconocido el impedimento colateral por sentencia como una modalidad de la cosa juzgada, en la cual no resulta necesaria la identidad de causas. El impedimento colateral por sentencia aplica cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final, y tal determinación es concluyente en un segundo pleito entre las mismas partes. Fatach v. Triple S, Inc., supra; Acevedo v. Western Digital Caribe, Inc., 140 D.P.R. 452 (1996); Rodríguez Rodríguez v. Colberg Comas, supra; A & P Gen. Contractors v. Asoc. Caná, supra; véase, Aponte v. Román, supra.
Distinguiéndose de la doctrina de la cosa juzgada —donde las partes no pueden relitigar las cuestiones previamente litigadas y resueltas, así como las que se pudieron haber litigado — , la doctrina de impedimento colateral solamente precluye del ámbito de relitigación aquellas cuestiones que efectivamente fueron controvertidas' en el primer proceso. Así, en nuestra jurisdicción se consideran finales y firmes única y exclusivamente los asuntos que se plantearon y que fueron resueltos real y necesariamente litigados. Esteves v. Ortiz Álvarez, 678 F. Supp. 693 (1988); Stitzer v. U.P.R., 617 F. Supp. 1246 (1985).
Tanto el demandado como el demandante pueden alegar el impedimento colateral por sentencia, en un pleito civil o criminal, siempre que se cumpla con el requisito de identidad de partes entre el procedimiento actual y el procedimiento anterior. La esencia de la doctrina es que la parte contra quien se alega el impedimento colateral por sentencia litigó y perdió el asunto en un pleito anterior. Fatach v. Triple S, Inc., supra; A & P Gen. Contractors v. Asoc. Caná, supra.
Ahora bien, la aplicación de la doctrina reconoce bien definidas y marcadas excepciones de orden equitativo. Entre éstas, se ubican aquellos casos que están permeados de consideraciones de orden público. Los tribunales deberán negarse a aplicar la doctrina en forma inflexible, cuando hacerlo derrotaría los fines de la justicia, especialmente si se plantean consideraciones de interés público. A tales efectos, no debe perderse de perspectiva que la doctrina —en esencia— descansa en el principio básico de que debe propiciarse la terminación de litigios. Pero sin embargo, cuando su aplicación rigurosa derrotaría en la práctica un derecho revestido en alguna forma de interés público, los tribunales se inclinarán hacia la solución que garantice cumplida justicia; obviando así la forma rígida de una ficción de ley que, en definitiva, obedece consideraciones de conveniencia y orden procesal. Pagán Hernádez v. U.P.R., supra; Pérez v. Bauzá, 83 D.P.R. 220, 225-226 (1961); Millán v. Caribe Motors Corp., 83 D.P.R. 494, 505, 510 (1961).
En el caso de autos, el peticionario plantea que en la petición de incapacidad se determinó como hecho esencial que el causante estaba incapacitado, y así se incluyó mediante sentencia que advino final y firme. No podemos coincidir con el peticionario.
*448 Para que sea aplicable la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia, el hecho en cuestión deberá ser litigado y resuelto. En el caso de marras, el hecho esencial no es otro que la incapacidad del causante al momento de testar. Este hecho particular no fue litigado ni resuelto por el tribunal en la Resolución del primer pleito y lo cual, conforme al Código Civil, constituirá la prueba necesaria para determinar si el Testamento es nulo. El hecho esencial requerido en el caso ante nuestra consideración no se limita a la declaración general de incapacidad del causante, sino al momento mismo del otorgamiento del Testamento impugnado. Resolver en contrario sería un contrasentido a la presunción de capacidad que cobija a toda persona y la cual se extiende, inclusive, mediando una detemiinación de incapacidad. Por lo tanto, aun luego de que el tribunal haya declarado incapaz al causante, éste podía válidamente otorgar un Testamento siguiendo lo dispuesto por el Art. 614 del Código Civil, supra.
Por considerar correcto lo resuelto por el Tribunal de Primera Instancia al determinar que en el caso de autos es inaplicable la figura de cosa juzgada en su modalidad de impedimento colateral por sentencia.
V
Por los fundamentos antes esbozados, se deniega la expedición del auto de certiorari solicitado.
Así lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones